NEW JERSEY TURNPIKE AUTHORITY, PLAINTIFF-RE-SPONDENT, v. CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.

Argued December 4, 1961—Decided January 22, 1962.

Mr. *Meyer Pesin* argued the cause for the appellant (*Mr. Ezra L. Nolan,* Corporation Counsel of the City of Jersey City, attorney).

Mr. *Grover C. Richman, Jr.,* argued the cause for the respondent.

The opinion of the court was delivered by

JACOBS, J. On November 14, 1958 the plaintiff, New Jersey Turnpike Authority, instituted an action in condemnation pursuant to *R. R.* 4:92. It alleged that it was authorized by *N. J. S. A.* 27:23–5(j) to exercise the power of eminent domain; it sought to condemn 21 parcels of land owned by the defendant City of Jersey City and located within its borders along a route selected by the Turnpike Authority; and it demanded judgment appointing three commissioners in accordance with the provisions of *R. S.* 20:1–1 *et seq.* to fix the compensation for the taking of the land "including the damage, if any, resulting from the taking, to any remaining property, and to make separate awards for each parcel of land." An order to show cause was issued, an answer joining in the demand for the appointment of commissioners was filed, and on February 16, 1959 an amended order appointing commissioners was entered. The amended order directed that the commissioners examine and appraise the land and fix the compensation for the taking of the land "including the damage, if any, resulting from the taking to any remaining parcel as of the date of taking and to make separate awards for each of said parcels of land."

The report of the commissioners was filed on April 29, 1960. It first set forth that hearings were held on many

days from May 12, 1959 through February 16, 1960, that these hearings were attended by representatives of the parties, that the land was examined on three separate occasions, and that valuation evidence was submitted and duly considered along with the arguments and briefs submitted on behalf of the parties. It then certified that the commissioners had made a just and equitable appraisement of the land "including the damage, if any, resulting from the taking, to any remaining property, as of the date of the commencement of this action" and that they had determined "that the sum of $523,715 represents a just and equitable value" of all of the lands and property in question "including consequential damages." The concluding paragraph of the report read as follows: "We do award and report that the New Jersey Turnpike Authority pay to the owners-defendants, the City of Jersey City, for the land and premises to be taken for public use the sum of $523,715 as the value of said land and premises and damages thereto."

On May 10, 1960 the Turnpike Authority, through its counsel Mr. Richman, filed a petition praying that the report of the commissioners be declared null and void, that three substituted commissioners be appointed and that the Turnpike Authority's time for appeal be extended. The petition alleged that the report of the commissioners was defective in the following respects: (1) the report stated that the valuation was as of the date of the commencement of the condemnation action in 1958 whereas the actual taking of the land by the Turnpike Authority was in December 1954 and the parties had stipulated that the valuation would be as of the date of the taking; (2) the report referred to "consequential damages" which "may include damages which are not compensable and should not have been considered"; and (3) the report made an award of a single lump sum rather than a separate award for each of the 21 parcels. Upon the filing of the petition, an order to show cause was issued and the time for appeal from the award of the commissioners was extended.

On May 20, 1960 the commissioners addressed a letter to the court with respect to the three objections raised by the Turnpike Authority. The letter contained the following statements and offered to support them by affidavits or testimony if the court so desired:

"Mr. Richman makes three points. First, that from the Report itself he concludes the valuations fixed by the Commission were arrived at as to the value of the lands on the date of the starting of the suit which was November 14, 1958. In our judgment, affirmative action was started by the Turnpike as of the date it took possession of the lands in 1954. In this case at our hearings it, was stipulated that the values to be arrived at were values as of the time of the taking, that is, December 24, 1954 and no testimony was received as to valuations except as to those that obtained in 1954, nor was any other valuation date considered by us.

The second point that Mr. Richman makes is that of these 21 parcels, it was the duty of the Commissioners to appraise each parcel separately. We did appraise them separately but did not make them part of our report. In our report we fixed the total of the value of the lands separately appraised by us. If the Court wishes to have that separate appraisal, we will be glad to send it to the Court and all counsel.

The next point Mr. Richman makes is that there is no way to distinguish the item of consequential damage from the item fixing the value of the land taken. We followed the ordinary rule, basing our value of land taken on the evidence before us and where there was damage to the remainder, the item of such consequential damage was included in the award for that particular parcel. All witnesses where there was a matter of consequential damage, both for the State and for the Authority, testified to such consequential damage."

So far as the record before us indicates, there was never any reply to the letter from the commissioners. On October 10, 1960 counsel for the parties appeared before the Law Division of the Superior Court which then granted the Turnpike Authority's petition. The Law Division expressly rejected the position of counsel for Jersey City that the commissioners should have the right "to remold and conform" their report to accord with their actual determinations as clarified by their letter of May 20. On December 2, 1960 the Law Division entered a formal order setting aside the commissioners' report and appointing sub-

stituted commissioners to examine and appraise the land. On December 14 Jersey City appealed from this order to the Appellate Division (*cf. R. R.* 2:2–3) and while its appeal was pending there we certified it on our own motion. See *R. R.* 1:10–1(a).

 It is clear that the report of the commissioners should have contained an award for each of the 21 parcels. *N. J. S. A.* 27:23–5(j) provides that the Authority may join any number of parcels to be condemned, *"provided, however,* that separate awards be made for each tract or parcel of land or property."* Jersey City contends that the quoted clause should be restricted to cases where the parcels are owned by separate owners. The statutory language is not so confined and we find no reason for so construing it. In any event, the order appointing the commissioners contained an explicit directive for separate awards, and the Turnpike Authority was entitled to full compliance so that it could fairly decide for itself which of the separate awards it would appeal from and which awards it would not resist. See *N. J. S. A.* 20:1–16; *R. R.* 4:92–6. Jersey City urges that, assuming all of the foregoing, the proper course was not to have new condemnation commissioners but to permit the old commissioners to remold their report so as to incorporate the 21 separate awards which they in fact made but neglected to set forth in the report. It points out that the cost "in the preparation of its case, including the cost of experts, was over $15,000" and that if the appointment of new commissioners by the Law Division is sustained, the city will unjustifiably be burdened with great additional expense and delay.

The course urged by the city is patently the sensible one and should be followed unless precluded by some fixed legal barrier. It must be borne in mind that the Turnpike Authority does not question the competence and conscientiousness of the commissioners, that no revaluations or reconsiderations are suggested or involved, and that the Law Division may readily verify the statements of the commis-

sioners by taking testimony and examining the pertinent work records. If the commissioners appraised the parcels separately and then simply totaled the individual appraisals, their failure to include the separate appraisals along with the total should, as a matter of good sense, be viewed as an inadvertent formal omission which the commissioners may now be permitted to supply. This would fairly and justly avoid the additional expense and delay which would result from nullification of the report. In other jurisdictions, courts have not hesitated to remit condemnation awards to commissioners for comparable corrective action, and indeed for much more far reaching action. See *New York, W. & B. Ry. Co. v. Siebrecht,* 73 *Misc.* 219, 130 *N. Y. S.* 1005 (*Sup. Ct.* 1911); *United States v.* 25.4 *Acres of Land, Etc.,* 61 *F. Supp.* 251 (*E. D. N. Y.* 1955); cf. *Andrews v. Cox,* 127 *Conn.* 455, 17 *A.* 2d 507 (*Sup. Ct. Err.* 1941); *Brackett v. Commonwealth,* 223 *Mass.* 119, 111 *N. E.* 1036, 1039 (*Sup. Jud. Ct.* 1916); *In re Bainbridge-Unadilla Part* 1, *State Highway,* 168 *Misc.* 407, 5 *N. Y. S.* 2d 988 (*Cty. Ct.* 1938); *In re Luzerne-Lake George County Highway No.* 804, 145 *Misc.* 736, 261 *N. Y. S.* 894 (*Cty. Ct.* 1932); 6 *Nichols, Eminent Domain* § 26.531, *pp.* 231–232 (*3d ed.* 1953).

It is true that in the states where the afore-cited cases arose, the local statutory provisions relating to condemnation proceedings may have differed somewhat from those in our statutes. See *Tennessee Gas Transmission Co. v. Hirschfield,* 38 *N. J. Super.* 132, 136 (*App. Div.* 1955). And it may also be acknowledged, as our courts have often pointed out, that the sovereign power of eminent domain rests in the legislative branch of our government, that the manner and scope of its exercise may be determined by the Legislature, and that the courts properly defer to the legislative will as to the mode for fixing the compensation payable to the landowner. See *State v. Fisher,* 54 *N. J. Super.* 274, 281 (*App. Div.* 1959); cf. *Morris May Realty Corp. v. Bd., etc., County of Monmouth,* 18 *N. J.* 269, 277 (1955); *Abbott v. Beth*

*Israel Cemetery Ass'n of Woodbridge,* 13 *N. J.* 528, 543 (1953). But our present condemnation legislation may be searched in vain for any statutory provision which is designed to preclude our courts from remitting condemnation reports for formal corrective action such as suggested here. When the Law Division rejected the city's position that the commissioners should be permitted to remold their report, it expressed the view that it had no power to take that course and relied, not on any cited statutory provision, but on the readily distinguishable decisions of the Appellate Division in *State v. Fisher, supra,* and of this court in *In re New Jersey Turnpike Authority,* 10 *N. J.* 456 (1952). The *Turnpike Authority* case had, in turn, relied upon the opinion in *Dean v. Park Ridge,* 108 *N. J. L.* 4 (*Sup. Ct.* 1931), affirmed 109 *N. J. L.* 262 (*E. & A.* 1932).

In the *Dean* case, the order appointing commissioners directed that they file their report before May 31. They neglected to do so but did file it on a later date. In holding that the report had no legal effect, the former Supreme Court cited the statutory provision which at that time expressly directed that if the report of the commissioners was not filed within the time limited by the order of the court "the powers of the commissioners shall cease." See 2 *Comp. St. of N. J., p.* 2184, § 6 (1911); *R. S.* 20:1–10. In the *Turnpike Authority* case, the commissioners filed their report within the time provided by the order of the court. Thereafter the landowners made application to have the commissioners reconsider and increase their award; the contention of the landowners was that the award had been based on an incorrect assumption that the Turnpike Authority would construct a road of ingress and egress to their remaining property. The Law Division denied the application and this was sustained on appeal in an opinion which relied heavily upon the *Dean* case and *R. S.* 20:1–10 as it then read. The opinion noted first that if the commissioners did not file their report within the allotted time, their powers were at an end by virtue of the express terms of the statute; it then reasoned

that if the powers of the commissioners expired at the time limited where no report had been filed it would follow "*a fortiori* that their powers would expire if a report is made upon the date it is filed or at the very latest on the day limited in the order." 10 *N. J.*, at *p.* 459.

In the *Fisher* case, the taking of the property occurred years before the institution of the condemnation action. The report of the commissioners was filed within the permitted time and it awarded a sum "including therein use by the State." Neither party appealed within the time allowed but long thereafter the landowners filed a petition in the Law Division seeking interest on the award from the date of actual taking until the filing of the condemnation complaint. The Law Division denied the claim for interest and this was sustained by the Appellate Division in an opinion which properly pointed out that it would be inequitable to add interest to the award since the commissioners themselves had "included some undisclosed amount for 'use by the state' in the figure of compensation awarded.". 54 *N. J. Super.*, at *p.* 280. However, in concluding its opinion the Appellate Division, citing *In re New Jersey Turnpike Authority, supra,* expressed the view that the Law Division had no power "to correct or alter the filed report or even to order the resubmission of the subject matter or any part to the Commissioners." 54 *N. J. Super.*, at *p.* 282. Since the *Turnpike Authority* case was decided, statutory changes have removed its underpinning. In *L.* 1953, *c.* 20, the Legislature eliminated from *R. S.* 20:1–10 its previous reference to the cessation of the powers of the commissioners. In its present form, *R. S.* 20:1–10 merely directs that the report of the commissioners shall be made in writing under the hands of the commissioners or any two of them and filed by them with the Superior Court, to remain of record therein.

A statutory change of even greater significance was effected by the 1953 amendment of *R. S.* 20:1–2. That section had simply provided that the party exercising the right of taking shall present a petition to the judge for

the appointment of commissioners. Decisions construing it had held that the statutory jurisdiction which it conferred was not upon the court but upon the individual judge who was designated as a legislative agent and was not exercising any judicial function. See *Ryan v. Housing Authority of Newark,* 125 *N. J. L.* 336, 340 (*Sup. Ct.* 1940); *Bergen County Sewer Authority v. Little Ferry,* 5 *N. J.* 548, 552 (1950). This approach with its restrictive implications was discarded in the 1953 amendment of *R. S.* 20:1-2. See *Morris May Realty Corp. v. Bd., etc., County of Monmouth, supra,* 18 *N. J.,* at *p.* 275; *cf. Tennessee Gas Transmission Co. v. Hirschfield, supra,* 38 *N. J. Super.,* at *pp.* 135–137. As amended, the section now provides that the party exercising the right of taking shall institute "an action in the Superior Court" for the appointment of commissioners and that in any such action, "the court shall have and shall exercise its full jurisdiction, including jurisdiction to determine the right to exercise the power of eminent domain." The statutory language is comprehensive and we find no persuasive reason for narrowing it. When considered in the light of the acknowledged sweep of the court's inherent jurisdiction to remand proceedings for further action by legislative or administrative agents generally, it is at least sufficient to support a discretionary judicial power to remit a condemnation report for clarification and remolding to the limited extent suggested here. *Cf. Laba v. Newark Board of Education,* 23 *N. J.* 364, 382 (1957):

"The inherent procedural power to remand in the interests of justice has long been applied in the courts. See *Ford Motor Co. v. National Labor Relations Board,* 305 *U. S.* 364, 373, 59 *S. Ct.* 301, 83 *L. Ed.* 221, 229 (1939); *Grant v. Grant Casket Co.,* 137 *N. J. L.* 463, 465 (*Sup. Ct.* 1948), affirmed 2 *N. J.* 15 (1949). Since the creation of our new judicial structure under the 1947 Constitution, court procedures have become more flexible and we have displayed consistent recognition that they must always conform with good sense and justice; in appropriate instances this court has not hesitated to remand for further inquiry in the court below even though strict adherence to the procedural niceties might well have dictated another course. See *Devlin v. Surgent,* 18 *N. J.* 148, 153 (1955); *Vacca*

*v. Stika,* 21 *N. J.* 471, 475 (1956). Similarly this court has acknowledged that if administrative tribunals are to be permitted to function effectively they likewise must have broad powers to adjust their procedures in furtherance of their proper objectives. See *Handlon v. Town of Belleville, supra; Air-Way Branches, Inc. v. Board of Review,* 10 *N. J.* 609, 614 (1952) ; *In re Plainfield-Union Water Co.,* 14 *N. J.* 296, 305 (1954)."

See *Gilligan v. International Paper Co.,* 24 *N. J.* 230, 239 (1957) ; *Kopera v. West Orange Bd. of Education,* 60 *N. J. Super.* 288, 297 *(App. Div.* 1960).

If, after receiving such proofs as may be necessary, the Law Division is satisfied that the commissioners appraised the parcels separately and then totaled the individual appraisals, it has the power to remit the report to them for inclusion of the individual awards. It is similarly empowered to permit the other requested clarifications. The amended order appointing commissioners directed, in furtherance of *N. J. S. A.* 20:1–2, that they fix the compensation for the taking of the land "including the damage, if any, resulting from the taking to any remaining parcel." The report of the commissioners properly certified that they had made a just and equitable appraisement of the value of the land "including the damage, if any, resulting from the taking, to any remaining property." See *Hutches v. Hohokus,* 82 *N. J. L.* 140, 143 *(Sup. Ct.* 1911). It then ambiguously referred to "consequential damages" but the letter of the commissioners sets forth that this inadvertent phraseology was intended to relate, as did all of the evidence bearing on consequential damages, solely to the damage resulting to any remaining property. Upon being satisfied of this, the Law Division may permit the appropriate clarification. *Cf. New York, W. & B. Ry. Co. v. Siebrecht, supra,* 130 *N. Y. S.,* at *p.* 1007. The final alleged deficiency bears on the reference in the report to the appraisement of the value of the land as of the date of the commencement of the condemnation action. The order appointing the commissioners directed that they value the land as of the date of taking. See *State v. Jones,* 27

*N. J.* 257 (1958). According to the letter of the commissioners, the parties stipulated that the valuations were to be as of the date of the taking, all of the valuation testimony on behalf of the parties related to that date, and the valuations arrived at by the commissioners were as of that date. If this is acknowledged or established, the Law Division may permit the appropriate clarification. Upon remission of the report to the commissioners, the Law Division should fix an early time for the refiling of the report and either party may thereafter pursue an appeal from the refiled report to the Superior Court in accordance with *N. J. S. A.* 20:1–16 and *R. R.* 4:92–6.

Reversed and remanded for further proceedings in conformity with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.