THE VILLAGE OF SOUTH ORANGE, A MUNICIPAL COR-
PORATION OF THE STATE OF NEW JERSEY, PLAIN-
TIFF-RESPONDENT, v. ALDEN CORPORATION, A NEW
JERSEY CORPORATION, DEFENDANT-APPELLANT,
AND NATIONAL NEWARK AND ESSEX BANK, A NA-
TIONAL BANKING ASSOCIATION AND THE STATE
OF NEW JERSEY, DEFENDANTS.

Argued February 24, 1976—Decided October 21, 1976.

Mr. *Edward D. McKirdy* argued the cause for appellant (*Messrs. McKirdy, Risken and DeFazio*, attorneys; *Mr. McKirdy* on the brief).

Mr. *Angelo A. Mastrangelo* argued the cause for respondent (*Messrs. Fox, Schackner, Neagle, Mastrangelo and Gassert*, attorneys; *Mr. Mastrangelo* on the brief).

The opinion of the court was delivered by

MOUNTAIN, J. This is a condemnation case. It reaches us by way of appeal as of right pursuant to *R*. 2:2–1(a)(2), there having been a dissent in the Appellate Division. To resolve the narrow point at issue, we are called upon to clarify certain statements appearing in our earlier opinion in *Village of Ridgewood v. Sreel Investment Corp.*, 28 *N. J.* 121 (1958). What was there said and is here discussed, relates only to condemnation suits involving a partial taking. The pertinent question may be stated thus: To what extent, if at all, may evidence of the proposed use to which condemned property is to be put, be received and considered in evidence in determining severance damages with respect to that portion of the condemnee's property which is not taken?

In the case before us the Village of South Orange condemned a part of defendant's property, located in the South

Orange business district, for use as a municipal parking lot. Defendant's entire holding, before condemnation, consisted of about 26,654 square feet of land extending in a north-south direction from South Orange Avenue to First Street. The property had a width — and a frontage on each street — of approximately 50 feet. It was improved by a building on South Orange Avenue, vacant at the time of suit, but shortly prior thereto, occupied by a bank. Another building, formerly used by the bank as a warehouse, was located at the southerly end of the parcel, facing on First Street. Between the two structures was an open area of approximately 10,000 square feet, which had been used by the bank as a parking lot for its employees and customers. The property taken by the municipality included the land on First Street upon which the warehouse building was located as well as substantially all of the parking area.

Both parties appealed from the commissioners' award and the case was tried in the Law Division by a judge sitting without a jury. Dissatisfied with the judgment of the trial court, defendant appealed to the Appellate Division. Being uncertain as to the basis for the conclusions reached by the trial judge, the Appellate Division remanded the case for amplification and clarification. Upon receiving a response from the trial judge, two members of the appellate court expressed themselves as satisfied that the amplified record sufficiently supported the decision that had been reached below and hence voted to affirm. The third member of the court disagreed and voted to remand the case "for redetermination of the limited issue of damage to the remainder." An appeal to this Court followed.

The difficulty that has been experienced both by the trial court and the Appellate Division has its roots in our opinion in *Sreel, supra.* That case is remarkably like this one on its facts. There, as here, a part of defendant's property was taken by the municipality for use as a public parking lot. The defendant in that case, as is also true here, was left with business or commercial structures facing on a

street, but no longer enjoying the advantages of private parking facilities immediately to the rear. In each case, however, there was the prospect of a contiguous *public* parking facility. In *Sreel* the trial judge admitted evidence which, in the light of his charge, could reasonably have caused the jury to believe that the public parking lot to be constructed and maintained by the municipality, would, forever and for all time, adjoin defendant's remaining land. This was of course not so. Furthermore, the evidence admitted included a design of the proposed parking lot which had not been officially adopted or approved and in fact represented the views of only a single member of the governing body. Not only was the municipality not bound to adhere to this proposed plan — which showed an area of the property taken, adjacent to the rear of defendant's stores, as being left vacant for defendant's use as a loading zone — but it was in no way foreclosed from converting the property to some entirely different public purpose. We felt it was unfair to the defendant to leave the jury with the impression that the buildings on its remaining land would indefinitely be accommodated with an adjoining public parking lot. As we there said,

> To admit promissory representations of the condemnor's intention might well deprive a landowner of damages to which he is justly entitled on the mere expression of an intention to do something which might never be done. [28 *N. J.* at 130]

A municipality, having acquired real property to satisfy a particular need, may thereafter convert it to any other public use, if it becomes unsuitable or inconvenient to continue its use for the purpose originally intended. *N. J. S. A.* 40A:12–5(b); *Millburn Township v. Pitt,* 68 *N. J.* 424 (1975). We meant no more by what was said in *Sreel* than to emphasize that a landowner cannot have any legally binding assurance that a particular public use will be indefinitely continued upon condemned land adjoining his contiguous parcel which has not been taken. We did not

mean, as has been suggested, that all reference to the intended purpose of the condemned property is inadmissible on the issue of the amount of severance damages to which defendant may be entitled.

■ In New Jersey, in cases where there is a partial taking, the compensation due the landowner may be expressed and may be determined in either of two ways. These are clearly stated by a leading treatise writer in this field:

> In one group of cases· it has been held that the measure of damages is the market value of the land taken plus the difference before and after the taking in market value of the remainder area. This concept of the measure of damages may be graphically illustrated by the following equation:
> Value of land taken + (value of remainder area before taking — value of remainder area after taking) = just compensation.
> The second rule enunciated by some courts is the so-called "before and after rule," wherein the damages to the condemnee are computed as the difference between the value of the entire tract before the taking and the value of the remainder area after the taking. This approach is embodied in the following formula:
> Value of entire parcel before taking — value of remainder area after taking = just compensation. [4A *Nichols, Eminent Domain* (3rd ed. 1975), § 14.23]

In this State either formula may be employed. *Housing Authority of the City of Newark v. Norfolk Realty Co.,* 71 *N. J.* 314, (1976); *State v. Interpace Corp.,* 130 *N. J. Super.* 322, 329 (App. Div. 1974); *Public Service Electric & Gas Co. v. Oldwick Farms, Inc.,* 125 *N. J. Super.* 31, 35 (App. Div. 1973), certif. den. 64 *N. J.* 153 (1973).

■ Although in this case the effort to determine just compensation has proceeded in accordance with the first of the two formulations set forth above, thus requiring a determination of severance damages, what we are about to say has relevance whichever method is used. This is so because, as the formulas set forth above reveal, it becomes necessary in either case to ascertain the "value of remainder after taking." When we speak of "value" as a measure of just compensation, we are referring to market value; and when

we speak of market value we mean the price which would be mutually agreeable to a willing buyer and a willing seller, neither being under compulsion to act.

The measure of compensation is the fair market value. . . . 'value' has many meanings, [and] oftentimes the value to the owner differs from the value to the acquirer, but . . . most things have a general demand which give them a value transferable from one owner to another. Ordinarily this transferable value may be measured by the price which, in all probability, would voluntarily be agreed upon in fair negotiations between an owner willing (but not forced) to sell and a buyer willing (but not forced) to buy; and it is this price which is generally said to determine the fair amount of compensation to be paid to the owner. [*City of Trenton v. Lenzner*, 16 *N. J.* 465, 476 (1954), *cert.* den. 348 *U. S.* 872, 75 *S. Ct.* 534, 99 *L. Ed.* 757 (1955)]

In making a determination as to value, then, all the considerations which would influence a willing buyer and a willing seller in coming to terms as to price should be laid before the trier of fact. In a transaction involving a commercial property in a suburban business district, it must be apparent that one such consideration would be the availability of parking facilities. Accordingly the fact that South Orange intended to use the land taken as a municipal parking lot was admissible in evidence. It was something of which the trier of fact should take account. The point made in *Sreel,* which we repeat here, is that there exists no guaranty that the municipality will continue to devote the land to this purpose for any definite period of time. Testimony would be appropriate, if otherwise admissible, as to the probable length of time the use might continue. This factor — uncertainty of duration — should be in the mind of the judge and should be explained to the jury. With this caveat in mind, there is clearly here no reason to exclude consideration of the use to which the plaintiff intends to put the condemned parcel.

One final point merits comment. Defendant has consistently maintained that it is entitled to a provision in any final judgment binding the plaintiff to perpetual use

of the condemned property for parking purposes or, should there be a future change disadvantageous to it, that it be granted leave to apply at that time for further damages. The contention is without merit. The award or judgment in condemnation represents the full compensation to which the landowner is entitled. The condemnor receives a title in fee simple free and discharged of all interests of the condemnee. *N. J. S. A.* 20:3–20. See also 4A *Nichols, supra,* § 14.244.

The decision of the Appellate Division is reversed and the cause is remanded to the Law Division for redetermination, in the light of what has been said above, of the amount of severance damages, if any, to which defendant may be entitled. Either party may submit additional proofs. No costs.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.