STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-
PORTATION, PLAINTIFF-APPELLANT, v. MORRIS SILVER
AND SARA SILVER, HIS WIFE, DEFENDANTS-RESPON-
DENTS, AND THE CENTRAL JERSEY BANK AND TRUST
COMPANY, A CORPORATION OF NEW JERSEY; VLADIMIR
PENDOV; TOWNSHIP OF HOWELL, IN THE COUNTY OF
MONMOUTH, A MUNICIPAL CORPORATION OF THE STATE
OF NEW JERSEY, DEFENDANTS.

Argued October 12, 1982—Decided March 17, 1983.

508

*Patricia D. Connelly,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Michael R. Cole,* Assistant Attorney General, of counsel).

*Ruben D. Silverman* argued the cause for respondents (*Silverman & Silverman,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This action arises under the Eminent Domain Act of 1971, *N.J.S.A.* 20:3–1 to –50. It involves the public acquisition for highway purposes of a portion of each of two commonly owned contiguous parcels of land that had been put to separate uses before the taking. In this case, the issue is whether, in awarding severance damages attributable to the partial taking from each lot, the common ownership of the contiguous lots and the potential of a unified use of the portions remaining after the taking are relevant in determining fair market value and just compensation.

The State instituted this condemnation action to take a part of each of two contiguous parcels owned by defendants along Route 9 in Howell Township. Defendants acquired ownership to one parcel in 1965, on which they had operated a clothing store since 1958. In 1972 they acquired an adjoining gas station property which was improved by gas pumps, a shed and a bungalow. The clothing store parcel had 70 feet of frontage along Route 9. The gas station parcel had 100 feet of frontage on Route 9 and a 20 foot frontage along a side street. The property acquired by the State consisted of a 45 foot-wide strip along the Route 9 frontage of each parcel and a 3 foot-wide strip along the side street. Virtually all of the clothing store parking area was taken, substantially reducing the functional utility of that parcel as a clothing store. The taking also effectively destroyed the use of the second parcel as a gas station by eliminating its gasoline pumps, storage tanks and structures.

The State maintained that the highest and best use of the portions of the properties remaining after the taking was in combination as a single economic unit. Because the properties were under common ownership, the original condemnation complaint designated all of defendants' property as one parcel, labeled 84A. Following objections by defendants that were upheld by the trial court, the State filed an amended declaration of taking with a new map that showed two separate parcels, designated 84A1 and 84A2. A hearing was then held before condemnation commissioners and separate awards were fixed for each parcel. Both parties appealed and an order was entered providing for a separate trial for each parcel. The trial court later ruled that each trial should be conducted before a different jury.

At the successive trials, defendants presented expert testimony valuing the damages to the gas station property caused by the partial taking to be $60,500. For the clothing store property, the defendants' expert maintained that the partial taking resulted in damages of $141,500. Thus, the total damages

presented by defendants were $202,000.[1]  The State's expert calculated the damages to the gas station parcel to be $17,000 and those to the clothing store parcel to be $50,700.  Thus, the State contended that its total liability was $67,700.[2]  However, the State also made an offer of proof out of the presence of the trier of fact which based the after-taking value of the remaining properties on their combined use.  By this calculation, the total damage resulting from the takings was $41,300.[3]

The first jury trial resulted in an award of $26,200 for parcel 84A1, the gasoline station property.  A second jury trial resulted in a verdict of $80,000 for parcel 84A2, the clothing store property.  The State appealed these awards, challenging the court's rulings that separate valuations of the parcels were required to be made in separate jury trials and that the value of the combined use of the properties after the taking was irrelevant and immaterial.

The Appellate Division affirmed the condemnation awards, holding that where defendants owned two separate parcels, acquired at different times and put to separate commercial uses,

---

[1]For the gas station property, the appraiser, using the income approach, found the property to be worth $81,900 before the taking.  Using the cost approach, he found the pre-taking value to be $67,300.  Under both approaches, the after-taking value was approximately $20,600.  For the clothing store parcel, the property was valued at $148,000 under the cost approach and at $135,000 under the income approach.  Both approaches yielded an after-taking value of about $6,500.

[2]For the gas station property the cost approach adopted by the State yielded a before-taking value of $41,300 and an after-taking value of $24,300.  Under the income approach the respective values were $38,000 and $22,900.  For the clothing store, the cost approach yielded a before-taking value of $81,900, and an after-taking value of $31,200.  The income approach produced a before-taking value of $84,000 and an after-taking value of $32,400.

[3]All of these values were made on the basis of the market approach.  The gas station and clothing store properties were valued before-taking at $41,300 and $81,900, respectively.  The after-taking value based on their combined use was $81,900, apportioned as $16,700 for the gas station property and $65,200 for the clothing store property.

they were entitled to compensation for the separate losses occasioned by the State's takings irrespective of the value of the combined use of the properties after the taking. The State's petition for certification was granted. 89 *N.J.* 425 (1982).

We now hold that notwithstanding the separate uses to which the respective properties had been put at the time of condemnation, the fact of common ownership and the possible assembly of the remaining parcels for combined use should have been admitted into evidence in the determination of severance damages attributable to the partial takings of each property. Furthermore, we hold that under these circumstances, the values of the condemned properties should have been determined in one proceeding before only one trier of fact. Accordingly, we reverse and remand.

I

The principles governing condemnation awards are well-settled. This case presents a novel application of these principles. Specifically, these condemnation actions call for the simultaneous application of principles that apply, on the one hand, to the partial taking involving related properties and, on the other, to the entire taking of separate and unrelated properties. In the first instance, condemnation valuation encompasses severance damages; in the latter, severance damages do not arise. Consequently, a brief recapitulation of condemnation valuation precepts is in order to set the controversy before us in an understandable perspective.

When the State takes private property for a public purpose under the provisions of the Eminent Domain Act of 1971, *N.J.S.A.* 20:3–1 to –50, the property owner is entitled to just compensation. *N.J. Const.* (1947), Art. I, par. 20. Where the whole of a property is taken, the measure of damages is the fair market value of the property as of the date of the taking, determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act. *Village of*

*South Orange v. Alden Corp.,* 71 *N.J.* 362, 368 (1976); *see also State v. Gorga,* 26 *N.J.* 113, 115–16 (1958); *City of Trenton v. Lenzner,* 16 *N.J.* 465, 476 (1954), *cert.* den., 348 *U.S.* 972, 75 *S.Ct.* 534, 99 *L.Ed.* 757 (1955).

■ However, where only a portion of a property is condemned, the measure of damages includes both the value of the portion of land actually taken and the value by which the remaining land has been diminished as a consequence of the partial taking. The diminished value of the remaining property constitutes the severance damages visited upon that property as a result of the taking. New Jersey cases have expressed the computation in either of two ways.

> In one group of cases it has been held that the measure of damages is the market value of the land taken plus the difference before and after the taking in market value of the remainder area. This concept of the measure of damages may be graphically illustrated by the following equation:
>
>> Value of land taken + (value of remainder area before taking – value of remainder area after taking) = just compensation.
>
> The second rule enunciated by some courts is the so-called "before and after rule," wherein the damages to the condemnee are computed as the difference between the value of the entire tract before the taking and the value of the remainder area after the taking. This approach is embodied in the following formula:
>
>> Value of entire parcel before taking – value of remainder area after taking = just compensation. [4A Nichols, Eminent Domain (3rd ed. 1975), § 14.23].
>
> In this State either formula may be employed. [*Village of South Orange v. Alden Corp.,* 71 *N.J.* at 367]

■ The various formulas fashioned to determine fair market value in a condemnation case attempt to ascertain the value that would be assigned to the acquired property by knowledgeable parties freely negotiating for its sale under normal market conditions based on all surrounding circumstances at the time of the taking. *See Village of South Orange v. Alden Corp., supra; Jersey City Redevelopment Agency v. Kugler,* 58 *N.J.* 374, 377–78 (1971); *State v. Gallant,* 42 *N.J.* 583, 588 (1964); *State v. Speare,* 86 *N.J.Super.* 565, 572 (App.Div.1965). *See generally* 4 Nichols, *The Law of Eminent Domain* § 12.23 at 12–117 (3d ed. 1980 & Supp.1981); 3 *Id.* § 8.5 at 8–98. Recognizing the fluid

and complex nature of market conditions, the courts in this state have shown considerable liberality in admitting evidence of market value, particularly in terms of the highest and best use of the subject property. *See State v. Gorga*, 26 *N.J.* 113 (1958) (holding admissible proof of a probable zoning amendment since the prospect of the amendment bore upon the market value as of the date of the taking). *See also State v. Market Associates*, 134 *N.J.Super.* 282 (App.Div.1975). In this aspect of valuation, the inquiry into relevant facts at the time of the taking may include those that have a bearing on an available future use of the property.

In the case of a partial taking the inquiry is even broader than when the entire property is condemned. It is necessary to assign a value not only to the property actually taken, but also to the property that is left. *Village of South Orange v. Alden Corp., supra.* Because there is property remaining subsequent to the taking that must be valued, an examination of all of the characteristics of such remaining property *after* the time of the taking, as opposed solely to facts in existence at or immediately before condemnation, is inescapable. Therefore, in the case of a partial taking, the market value of property remaining after a taking should be ascertained by a wide factual inquiry into *all* material facts and circumstances—both past and prospective—that would influence a buyer or seller interested in consummating a sale of the property. *Village of South Orange v. Alden Corp., supra; Housing Authority of Newark v. Norfolk Realty Co.*, 71 *N.J.* 314 (1976); *New Jersey Turnpike Auth. v. Bowley*, 27 *N.J.* 549 (1958).

This Court has recognized that the prospective as well as current use of the condemned property can be relevant to a determination of severance damages where there has been a partial taking. In *Village of South Orange v. Alden Corp.*, defendant's property was partially taken, and the condemned part included substantially all of defendant's parking area. The property owner "was left with business or commercial structures

facing on a street, but no longer enjoying the advantages of private parking facilities immediately to the rear . . . . [H]owever, there was the prospect of a contiguous *public* parking facility." *Id.* 71 *N.J.* at 365–66. This Court considered "[t]o what extent, if at all, may evidence of the proposed use to which condemned property is to be put, be received and considered in evidence in determining severance damages with respect to that portion of the condemnee's property which is not taken?" *Id.* at 364. The Court answered:

> [W]hen we speak of market value we mean the price which would be mutually agreeable to a willing buyer and a willing seller, neither being under compulsion to act. . . . *In making a determination as to value, then, all the considerations which would influence a willing buyer and willing seller in coming to terms as to price should be laid before the trier of fact.* [71 *N.J.* at 367–68 (citations omitted; emphasis added)]

The Court held that the intended use of the condemned property was admissible in evidence to determine the fair market value of the remaining parcel.[4] *See also McCandless v. United States,* 298 *U.S.* 342, 345–46, 56 *S.Ct.* 764, 765, 80 *L.Ed.* 1205, 1208 (1938) (holding that proof of a water supply near a condemned cattle ranch was relevant to show the most profitable use of property would have been a sugar cane plantation); *United States v. 105.40 Acres of Land, Etc., Porter Cty., Ind.,* 471 *F.2d* 207, 211 (7

---

[4]In *Alden Corp.,* the Court discussed another case with identical facts, *Village of Ridgewood v. Sreel Investment Corp.,* 28 *N.J.* 121 (1958), wherein the question was whether the trial court should have permitted untrue testimony suggesting that the municipal parking lot "would, forever and for all time, adjoin defendant's remaining land." 71 *N.J.* at 366. Although perpetual-parking lot evidence was held improperly admitted in *Sreel,* the Court in *Alden Corp.* clarified the meaning of the inadmissibility holding in *Sreel:*

> We meant no more by what was said in *Sreel* than to emphasize that a landowner cannot have any legally binding assurance that a particular public use will be indefinitely continued upon condemned land adjoining his contiguous parcel which has not been taken. We did not mean, as has been suggested, that all reference to the intended purpose of the condemned property is inadmissible on the issue of the amount of severance damages to which defendant may be entitled. [71 *N.J.* at 366–67]

*See also* Annot., 59 *A.L.R.3d* 488 (1974).

Cir.1972) (critical inquiry is "highest and best use" or use to which the parcels would likely be needed in the reasonably near future).

Where only a single parcel of property is involved, determination of the condemnation award is made within the analytic framework of whether the taking is "entire" or only "partial." However, where more than one parcel is involved, determination of the market value of the remaining parcels, in order to assess a condemnation award, can be more difficult.

The "unity of use" test is often used to solve that difficulty. Where there are two separate parcels of land, the functional unity or combination of the separate parcels is usually the key element in determining whether the condemnation of the whole of one parcel can nonetheless be characterized as a "partial taking" when viewed in relation to the other; and whether, in such a case, the award of severance damages attributable to any property not taken is appropriate. *See Housing Authority of Newark v. Norfolk Realty Co., supra* (holding that prior functional unity of two noncontiguous parcels would justify an award of severance damages to remaining parcel).

Ordinarily the actual functional or economic combination of parcels at the time of condemnation is the most convincing evidence that the taking of less than the combined whole of the properties is a partial taking. *Id.* However, the intended use of properties in combination—prospective functional unity—is also relevant in determining whether the condemnation of one of the parcels can be fairly regarded as a "partial taking," permitting an award of severance damages with respect to any remaining related properties. *State v. Bakers Basin Realty Co.,* 138 *N.J. Super.* 33 (App.Div.1975), aff'd, 74 *N.J.* 103 (1977) (holding that "reasonable probability" of future integration of three separate parcels justifies an award of severance damages). Hence, where a separately identifiable piece of property has been condemned, the intended or prospective use of adjacent or contiguous property in combination or assembly with the acquired parcel is a

pertinent consideration, not only in determining whether there has been a partial taking so that severance damages can be awarded but also in terms of assessing the fair market value of the remaining parcel as an element in the overall award of just compensation. *Id.*

Because the intended or prospective combined use of properties is relevant in ascertaining fair market value in the award of severance damages, it follows that all material circumstances bearing upon the likelihood of such a combined use are relevant. Such evidential circumstances would include any legal condition affecting the subject property in terms of permissible uses. *See, e.g., State v. Gorga, supra.* Such material circumstances could also encompass specifically the legal status or ownership of adjoining property. *E.g., Alden Corp., supra; Gorga, supra.* Further, common ownership itself can be highly relevant to the prospects of a particular future use. *E.g., Bakers Basin Realty Co., supra.*

## II

In this case, the parties quite properly dealt with the condemnations of the respective parcels as "partial" takings of each of two properties, previously put to separate uses. Expert testimony presented by both sides used the "before and after rule," as described in *Alden Corp., supra,* to compute the damages caused by each of the partial takings. The trial court and the Appellate Division determined that the partial condemnations of each of the properties must be viewed as unrelated to one another. The trial court ruled that the parcels in question must be valued separately and in economic isolation from one another. Consequently, the fact of their common ownership was considered irrelevant and disregarded completely in the award of severance damages attributable to each property.

The trial court felt impelled to disregard the fact of common ownership in part by *N.J.S.A.* 20:3–7(b), which provides:

The condemnation of 10 or less parcels of property lying wholly within the same county may be joined in one action; provided that a separate award, judgment and appeal shall be made, entered and taken with respect to each parcel[;] more than 10 parcels may be joined in one action only with leave of court[.]

This statute requires only that separate awards be made for each parcel. It clearly does not require that market factors, such as potential combined use and common ownership, be disregarded in reaching appropriate awards for each separate parcel. Indeed, the State's offer of proof, while considering these factors, ascribed separate values for each parcel.

The trial court also relied upon *New Jersey Turnpike Auth. v. Jersey City,* 36 *N.J.* 332 (1962). There condemnation commissioners made 21 individual appraisals but totaled them and reported a single sum. The Court stated:

It is clear that the report of the commissioners should have contained an award for each of the 21 parcels. *N.J.S.A.* 27:23–5(j) provides that the Authority may join any number of parcels to be condemned, *"provided, however,* that separate awards be made for each tract or parcel of land or property." ... The order appointing the commissioners contained an explicit directive for separate awards, and the Turnpike Authority was entitled to full compliance so that it could fairly decide for itself which of the separate awards it would appeal from and which awards it would not resist. [*Id.* at 336.]

This case does not speak to whether the common ownership of contiguous properties, which may affect the value of *each* individual parcel, is a proper subject for consideration by the trier of fact. Nor does it hold that the likely assemblage or combination of two separate parcels is irrelevant, and, therefore, inadmissible to show that the highest and best use of *each* parcel is in combination with the *other* parcel.

Defendants also rely upon cases that have generally recognized that where two parcels, even if contiguous, are put to different uses, the taking of one will not result in the diminution of the value of the other. In that context, the condemnation is not deemed to be a "partial" taking and severance damages to the property not actually acquired are disallowed. *Sharp v. United States,* 191 *U.S.* 341, 24 *S.Ct.* 114, 48 *L.Ed.* 211 (1903); *United States v. Easements Upon 104.09 Acres of Land,* 442

F.Supp. 926 (E.D.Wash.1977). *See generally* 27 *Am.Jur.2d, Eminent Domain,* § 315 at 134–37.

■ However, in this case there was a partial taking with respect to each of two unrelated properties. In effect, there were *two,* separate partial takings. Consequently, the award of severance damages was appropriate with respect to each condemnation. This being so, consideration of the highest and best use of the remainder portions of each property becomes the basis for a proper award of severance damages and, ultimately, just compensation as to each property. In this context, if an unfettered inquiry into market value fairly and reasonably leads to a conclusion that the highest and best or the optimum use of the remainder of *each* parcel is in combination with the remainder of the *other,* that vital consideration should be taken into account in properly determining the award of severance damages.

In this case, the application of the "unity of use" test is not for the purpose of determining whether the taking of all or a part of one parcel can be considered a "partial" taking in relation to the other parcel. As noted, case law from New Jersey and elsewhere that deals with whether a condemnation is partial in character justifying the award of severance damages applies the "unity of use" test as of the time of condemnation. *See Alden Corp., supra; Housing Auth. of Newark, supra; New Jersey Turnpike Auth. v. Bowley, supra; State v. Gallant, supra. See also Hoeft v. State,* 221 *Iowa* 694, 266 *N.W.* 571 (1936); *United States v. 158.24 Acres of Land, In Bee Cty., Texas,* 515 *F.* 2d 230 (5 Cir.1975). However, here we are concerned with the valuation of property remaining *after* the condemnation. The intended, reasonably prospective use of property is a germane consideration in addressing the optimum use of such property and determining its fair market value. In this setting, potential unity of use is simply another relevant factor bearing upon market value.

■ The fundamental question, then, is what evidence should have been admissible in the trial of these matters regarding the prospective use of the remainders of defendants' two parcels. Our decision in *Alden Corp.* goes directly to the valuation issue involved in this appeal. As we there stated:

> In a transaction involving a commercial property in a suburban business district, it must be apparent that one such consideration would be the availability of parking facilities. Accordingly the fact that South Orange intended to use the land taken as a municipal parking lot was admissible in evidence. It was something of which the trier of fact should take account.... [T]here is clearly here no reason to exclude consideration of the use to which the plaintiff intends to put the condemned parcel. [71 *N.J.* at 368]

Undeniably, in this case, available parking space, either adjacent to or nearby the remainder of the clothing store property, would be a material consideration "which would influence a willing buyer and a willing seller in coming to terms as to price" and as such should have been "laid before the trier of fact." *Id.*

As the State's offer of proof sought to demonstrate, the optimum use of the remainder of the gas station parcel was as a parking area for the remainder of the store parcel because without parking, the economic value of the store property as a retail store would be severely diminished. This testimony should have been admitted into evidence below. Moreover, as the State points out, in this case, the substitute land is not merely theoretically available—it was actually owned by the condemnee at the time of the taking. Consistent with principles extrapolated from *Gorga, Alden Corp.,* and *Bakers Basin,* this fact of common ownership should likewise have been presented to the trier of fact.

We therefore hold that evidence regarding the common ownership and the potential assemblage of the remainders of these two parcels should have been presented to the trier of fact. Accordingly, the matter must be remanded. Although the question of just compensation should be presented to the trier of fact as it affects each of the parcels in question, determination of the State's obligation of just compensation should be conducted in one trial. A single jury is appropriate because of the strong

connection between the two parcels for valuation purposes. In evaluating the condemned properties it will be necessary under the State's theory to consider the value of the unitary use of both after as well as at the time of the condemnation. This does not imply, however, that defendants do not have the right to present evidence of market value on the thesis that the properties should be viewed separately. Nevertheless, because of the overlap of the proofs regarding the potential after-taking unity of use of defendants' property, reasons of judicial economy, as well as fairness, accuracy and consistency, dictate that only one trial be conducted.

Reversed and remanded.

*For reversal and remandment* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER and POLLOCK —5.

*For affirmance* —Justice O'HERN—1.

O'HERN, J., dissenting.

I generally agree with the majority that "in the case of a partial taking, the market value of property remaining after a taking should be ascertained by a wide factual inquiry into *all* material facts and circumstances—both past and prospective— that would influence a buyer or seller interested in consummating a sale of the property." *Ante* at 515 (emphasis in original). I believe that the jury in this case understood the economic realities involved when it made its award. Accordingly, I would affirm.

We have long held that condemnation proceedings need not fit a rigid mold provided that they yield "justice and indemnity in each particular case." *Trenton v. Lenzner,* 16 *N.J.* 465, 476 (1954), *cert.* den., 348 *U.S.* 972, 75 *S.Ct.* 534, 99 *L.Ed.* 757 (1955); *see also South Orange v. Alden Corp.,* 71 *N.J.* 362, 367 (1976). In this case, although technically the evidence of contiguity was not before the jury, the State's cross-examination of witnesses

ensured that the jury would assess its argument concerning the unity of the property.

There is no precise and inflexible rule for the assessment of just compensation:

> The provision of the Constitution for the payment of just compensation is primarily a restriction on the power of the Legislature *for the benefit of the property owner.* As we have said, it is not a specific measuring rule and there is a margin of discretion for courts and the Legislature in devising rules to insure such compensation. [*Jersey City Redevelopment Agency v. Kugler,* 58 *N.J.* 374, 384 (1971) (emphasis supplied)].

I would not reverse the trial court for exercising its discretion in this case. In criminal cases, we have often said that a trial need only be fair, not perfect. *E.g., State v. Orecchio,* 16 *N.J.* 125, 129 (1954) (incidental errors may not be invoked to upset otherwise valid convictions); *cf. State v. Taylor,* 80 *N.J.* 353, 363 (1979) ("A guilty plea is not to be set aside whenever the trial court procedures are less than perfect"). This same principle should apply with at least as much force to the State's claims in this civil context. *Cf. Pressler, Current N.J. Court Rules,* Comment *R.* 2:10–2 (1983 ed.) (harmless error rule applicable to both civil and criminal cases).

This case began back in May 1976. Only a serious defect in the trial should warrant further prolonging these proceedings. Since the State's argument was conveyed to the jury, as the majority opinion requires be done in the future, I find no such defect here.