We do not retain jurisdiction.

741 A.2d 608

NEW JERSEY TURNPIKE AUTHORITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MICHAEL FELDMAN ASSOCIATES, L.L.C., MICHAEL FELDMAN, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 17, 1999—Decided December 14, 1999.

Before Judges STERN, KESTIN and STEINBERG.

*S. David Brandt* argued the cause for appellants (*Brandt, Haughey, Penberthy, Lewis & Hyland,* attorneys; *Mark K. Chase,* on the brief).

*James A. Raborn* argued the cause for respondent (*Riker, Danzig, Scherer, Hyland & Perretti,* attorneys; *Stuart M. Lederman* and *Mr. Raborn,* of counsel and on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

We granted leave to appeal to decide whether a greater or increased deposit has to be paid by plaintiff-condemnor, the New Jersey Turnpike Authority, to the Clerk of the Superior Court pending a trial *de novo* in this condemnation case. Defendant-landowners contend that they were deprived of "equal protection"

of the law because the taking authority's deposit into court was based exclusively on its own appraisal in the amount of $308,000, and was not increased following the award of the condemnation commissioners in a greater amount.

Defendants contend that because their land was "condemned before the Condemnation Commissioners had filed their report [they were] denied the same rights as any other property owner, whose property is condemned after the Condemnation Commissioners have filed their report." They argue that by virtue of the commissioners' report, dated March 17, 1999, determining that just compensation amounted to $750,000, an additional $442,000 (representing the difference between the $750,000 finding and the $308,000 deposit) should be deposited with the court pending the trial *de novo*. They claim that this is necessary, as a matter of constitutional principle and statutory interpretation, in order to place them on an "even playing field" with the Turnpike Authority and as a matter of fundamental justice while the issue of "just compensation" is being litigated on the trial *de novo*.

The principal issue turns on the construction of *N.J.S.A.* 20:3–18 which provides, in pertinent part:

**Deposit of estimated compensation**

Simultaneously with the filing of the declaration of taking, the condemnor shall deposit the amount of such estimated compensation with the clerk of the court. The amount so deposited shall be not less than the amount offered pursuant to section 6 hereof, and if an award has been made by commissioners hereunder, or a judgment determining compensation has been entered at the time of the filing of such declaration, the amount so deposited shall be not less than the amount of such award or judgment.

Section 6 of the Eminent Domain Act of 1971, *N.J.S.A.* 20:3–6, referred to in *N.J.S.A.* 20:3–18, provides in relevant part that "[i]n no event shall such offer be less than the taking agency's approved appraisal of the fair market value of such property."

Defendants contend they were denied equal protection because, had the taking occurred after the commissioners determined their award (or after the judgment was entered), defendants would have been entitled to the amount awarded by the commissioners (or as

embodied in the judgment), whereas now they are entitled only to the amount of the Turnpike Authority's appraisal. They argue that if the Turnpike Authority had not immediately taken possession by filing a "declaration of taking" when the complaint was filed on September 8, 1997 "and had [it] not sought possession (by the filing of a declaration of taking) until after the Condemnation Commissioners' award, the statute clearly mandates that the amount of the Condemnation Commissioners' award ($750,000) be deposited" when the Turnpike Authority took possession. But since plaintiff obtained possession by a taking before the award was made, defendants argue the "anomaly" is that defendants were only entitled to the amount of the appraisal, which was originally $2,500 and then increased to $308,000. As already noted, defendants therefore seek the $442,000 difference between the appraised amount and the Commissioners' award. They rely upon an unpublished opinion, which Judge Harold B. Wells, III, the trial judge in this case, found to be unpersuasive. *See R.* 1:36–3. While defendants concede that the difference between the final judgment and deposit will ultimately be paid, with interest, *see N.J.S.A.* 20:3–23 (and *N.J.S.A.* 27:23–5(j) with respect to the Turnpike Authority), they assert this "does not assist the landowner while the case is pending." Moreover, defendants claim that they have a right to withdraw the deposit, *N.J.S.A.* 20:3–23, and can do so at least by posting a bond even when the plaintiff-condemnor challenges the commissioners' award as excessive, as it has done here.[1]

We affirm the judgment under review substantially for the reasons expressed by Judge Wells in his letter opinion of June 4, 1999. We quote extensively from his opinion:

*N.J.S.A.* 20:3–18 deals with the deposit of commissioners' awards and directs that they be made only if they are the first deposit made in the case. Courts should enforce the express language of a statute, *Sheeran v. Nationwide Mut. Ins. Co., Inc.,* 80 *N.J.* 548, 556[, 404 *A.2d* 625] (1979) (citations omitted), and a literal

---

[1] Both parties have appealed to the Law Division from the report of the condemnation commissioners.

interpretation of the statute here is clearly not absurd. If the condemning authority has not taken the property before the Commissioners' award, that award represents the best available conclusion regarding its fair market value.

Before the award, the State's *bona fide* appraisal, which requires a site visit on notice to the property owner who may accompany the appraiser, *N.J.S.A.* 20:3–6 is the best indicia of fair value. This, where a declaration of taking has been filed, requiring an additional deposit after the commissioners' award, disturbs, in my opinion, a well crafted legislative balance between the duty of the State and the rights of the property owner. The initial steps of condemnation—site visit, appraisal, *bona fide* offer—are designed to lead to amicable settlement. However, once that opportunity has passed and the parties are engaged in adversarial proceedings before the commissioners complete with sparring experts with disparate appraisals in hand, it is fundamentally unfair to require the State to raise the deposit to an amount with which it disagrees and may appeal. The Commissioners['] award does not carry any presumptive weight.

To reiterate: the Legislature has expressly dealt with the several aspects of required deposits in Court in condemnation matters. It did so in language which omits any duty to make an additional deposit upon commissioner[s'] awards with the one exception mentioned above [when no prior deposit was made], not applicable here. To permit the exception to swallow up *N.J.S.A.* 20:3–18 and require an additional deposit in every case where the State loses before the commissioners violates both the language and spirit of the statute and could result in substantial, at-risk depletion of the budgeted funding for project land acquisition costs. Deposits may be drawn down and used by the property owner. Recovery of such money where the award is reduced by a jury cannot be guaranteed. Clearly, the additional deposit is not required to assure that the condemning authority will pay the ultimate award. I am satisfied that a literal reading of the statute makes sense. The property owner's argument is best addressed to the Legislature.

[footnote omitted.]

Thereafter, Judge Wells discussed the equal protection argument based on the difference in treatment between property taken by a declaration of taking before and after the commissioners' award is made. He rejected the equal protection argument now before us by stating:

Legislative enactments often do not resolve every issue that is before the Legislature. Indeed, solving one problem may create another. Perfect justice is not attainable. Accordingly, if the Legislature plainly achieves a reasonable balance between competing interests, a court should abstain from striking another balance out of its own sense of what is the proper policy or a "fair" result.

An issue in every condemnation is the fair market value of the subject property. *State v. Silver,* 92 *N.J.* 507, 513–14[, 457 *A.*2d 463] (1983). In New Jersey, interest is payable on unpaid awards. *N.J.S.A.* 20:3–[31]. For that reason, the timing of interim deposits in court during the process of deciding fair market value is not

central to an ultimately fair resolution of the condemnation proceedings and presents the Legislature with broad discretion to find a reasonable balance between competing interests consistent with its policy aims. It is one thing to order the state to deposit its bona fide appraisal figure upon taking a property; but entirely another to direct deposit of a contested award where the fight has yet one round to go. I, therefore, see no due process or equal protection implications arising out of the present legislative determination as to deposits in court.

We agree with this analysis. *Barone v. Department of Human Servs.*, 107 *N.J.* 355, 364–70, 526 *A.*2d 1055 (1987); *Greenberg v. Kimmelman*, 99 *N.J.* 552, 562–69, 494 *A.*2d 294 (1985); *Taxpayers Ass'n of Weymouth Township v. Weymouth Township*, 80 *N.J.* 6, 37–44, 364 *A.*2d 1016 (1976), *appeal dismissed* and *cert. denied*, 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977).

In addition, we note that under *N.J.S.A.* 27:23–5(j) the Turnpike Authority is required to make a deposit into "a special trust fund" of "an amount at least equal to twice the aggregate amount deposited with the Clerk of the Superior Court." The statute presumably is premised upon the need for trust fund reserves because of the absence of any taxing authority by the Turnpike Authority. In any event, as counsel for defendants acknowledged before us, plaintiff Turnpike Authority placed $616,000 into its trust fund to assure payment to defendants upon an award above the $308,000 already paid into court, together with interest. If defendants' position before us were upheld, the Turnpike Authority would have to make an additional deposit of $442,000 into court, as demanded by defendants, as well as an additional $884,000 into the Turnpike Authority trust fund. We have no doubt that the Legislature never intended such utilization of funds of a governmental entity pending a trial *de novo* before the Superior Court, particularly when defendants' own appraisal is only for $900,000, or less than the aggregate already dedicated to the taking.

We recognize the merit of defendants' argument that some condemning authorities may not be fiscally sound and if the additional deposit is not required, there could be a taking without ultimate payment of the "just compensation" that is constitutionally required by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 20 of the New Jersey Constitution. It is this concern which led the trial judge in

the unpublished case referred to by Judge Wells to enter the order he did. There is merit to such an approach when the fiscal integrity and lack of taxing authority of the condemning entity may not be able to assure the award of "just compensation." But it need not be done, and is not statutorily authorized where the payment of "just compensation" can be assured.[2]

In light of the statutes unique to the Turnpike Authority, the required payment into its special trust fund, and the undisputed financial integrity of that entity, we do not have to address the question of the power of the Superior Court to order an increased deposit after the Commissioner's report is filed in instances where the condemning authority may not be able to show sufficient reserves to pay a potentially greater award than the prior deposit.

The judgment is affirmed substantially for the reasons expressed by Judge Wells in his opinion of June 4, 1999, as supplemented herein.

---

[2] In recommending what became the "Eminent Domain Act of 1971," *N.J.S.A.* 20:30–1 to –50, the Eminent Domain Revision Commission, in Article III, "Taking Possession of Property Before Final Determination of Amount of Compensation," of its 1965 Report, stated:

C. Upon application to the court and due notice, parties in interest may withdraw the funds so deposited. Should the amount withdrawn exceed the final award, the excess shall be repaid with interest. Should the award be found insuff[i]cient, the condemnor shall pay the deficiency with interest. D. The deposit and withdrawal of funds shall be without prejudice to the question of total compensation and shall not be evidential in the cause. E. Provisions in existing statutes requiring the condemning body to establish trust funds for the payment of deficiencies should be eliminated as to those bodies whose financial responsibility is unquestioned. This will avoid the presently existing "freezing" of substantial sums for long periods of time. Should the court determine that the financial responsibility of the condemnor is uncertain, it may direct that such trust fund be established.

We leave consideration of appropriate circumstances for the creation of a trust fund or additional deposit into court until another day when a true issue of "financial responsibility" is presented.