**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3469-18T4

NORTH HUDSON
SEWERAGE AUTHORITY,

    Plaintiff-Respondent,

v.

HARTZ MOUNTAIN
INDUSTRIES INC.,

    Defendant-Appellant,

and

STATE OF NEW JERSEY, and
TOWNSHIP OF WEEHAWKEN,[1]

    Defendants.

_____

        Argued telephonically May 28, 2020 –
        Decided June 24, 2020

        Before Judges Koblitz, Whipple and Mawla.

---

[1] Neither the State of New Jersey nor the Township of Weehawken appeared in the litigation.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1722-14.

Anthony F. Della Pelle argued the cause for appellant (McKirdy, Riskin, Olson & Della Pelle, PC, attorneys; Anthony F. Della Pelle, of counsel and on the briefs; Allan C. Zhang, on the briefs).

John J. Curley argued the cause for respondent (John J. Curley, LLC, attorneys; John J. Curley, of counsel and on the brief; Jennifer J. Bogdanski, on the brief).

PER CURIAM

Defendant Hartz Mountain Industries (Hartz) returns following our July 2018 remand to the trial court for reconsideration of the award for one of four easements involved in this matter as well as severance damages. While the easement award was settled through mediation, the trial court reconsidered the severance damages, concluding again in its March 15, 2019 order that none were appropriate. Because the court did not abuse its discretion, we affirm.

Plaintiff North Hudson Sewerage Authority (NHSA) exercised eminent domain to intrude on a portion of Hartz property on the Hudson Riverfront in Weehawken for the purpose of constructing a combined sanitary and storm sewer system. Following a bench trial where experts offered vastly disparate opinions as to the amount of just compensation, the trial court made an award of compensation, which Hartz appealed. We determined that the trial court erred in its unity of

ownership and use analysis, remanding for reconsideration of severance damages. North Hudson Sewerage Auth. v. Hartz Mountain Indus., Inc., Nos. A-5011-15 & A-5201-15 (App. Div. July 26, 2018). On remand, the trial court acknowledged that while Hartz was legally entitled to severance damages, it failed to establish a factual basis for compensation.

Hartz contends the trial court wrongfully disregarded our directive to grant severance damages and considered inadmissible evidence. Further, because NHSA's expert's conclusion that severance damages were not warranted was based upon an incorrect legal premise, Hartz asserts the trial court erred when refusing to reopen the record to require new or revised expert testimony. Hartz also takes issue with the trial court's credibility determinations.

In our prior opinion we summarized the matter as follows:

> On April 14, 2014, NHSA sought four easements on Hartz['s] property, a ninety-acre tract known as Lincoln Harbor, which has been under development for thirty years. Hartz had built a 582-unit luxury apartment complex called Estuary on a riverfront portion of Lincoln Harbor with unimpeded views of the New York City skyline. Hartz owns approximately ninety-two percent of Estuary.
>
> NHSA's four easements were needed to construct and maintain a sewer pipeline to manage Weehawken storm water. Permanent Easement B provides for the installation, operation, and maintenance of a ninety-six inch sewer pipe that is located within the right of way of

Riverview Terrace, a private street owned by Hartz. The total area of Permanent Easement B is 14,424 square feet. Temporary Easement A, lasting ten months, is designed to provide sufficient space for construction activities for Permanent Easement B. The area of Temporary Easement A is 19,638 square feet.

Permanent Easement D provides for the construction of a platform above the Hudson River as well as the construction of a superstructure for two sewer outfalls that will discharge storm water and treated sewage below the Hudson River's surface. The total area of Permanent Easement D, the Outfall Facility, is 17,875 square feet, and it will be constructed level with the existing Hudson River Walkway.

Each new outfall constructed on this platform will have hidden netting chambers that will be equipped with a system to catch floatables – solid objects larger than one-half inch in diameter. The netting system will be accessed from the top of the platform and is maintained by a truck and boom system that removes and replaces the nets periodically. Temporary Easement C, lasting twelve months, is designed to provide space for the construction of Permanent Easement D. The total area of Temporary Easement C is 4600 square feet.

On June 23, 2014, the trial court entered final judgment allowing NHSA to exercise its eminent domain power and appointing Condemnation Commissioners to determine just compensation. N.J.S.A. 20:3-12. . . . [In January 2015], a hearing was held before the Condemnation Commissioners. Two weeks later, the Commissioners issued their report, awarding $129,816 compensation to Hartz for the permanent easements and $11.25 per square feet for the temporary easements. Both NHSA and Hartz appealed from the Commissioners' report.

4

. . . .

[A three-day bench trial was held between February 22 and 24, 2016.] Paul Beisser, NHSA's expert, valued the taking using the comparable sales approach. He concluded that the underlying land value was $1.8 million – $41.32 per square foot of each easement area. Albert F. Chanese, Hartz's expert, valued the taking using the same methodology, and concluded that the underlying land value was $11.6 million – $265.70 per square foot of each easement area. The court fully accepted Hartz's valuation of the property. . . .

Each expert also rendered opinions about the value of the specific easements. Beisser reduced his value of the property subsumed by Permanent Easement B by ten percent to reflect the value of the limited easement interest. Although Permanent Easement D was ultimately developed, Beisser attributed no value to Easement D because, in his opinion, Easement D could not be developed. He determined that the value of Temporary Easements A and C should be based upon an eight-percent rate of return that was derived from the market value of the easement areas. He ultimately concluded that just compensation for the takings was $128,000, adjusted to $150,000 to reflect favorable market conditions.

Chanese concluded that Permanent Easement B represented twenty percent of the bundle of rights to that property, and valued this taking at $766,489. He concluded that Permanent Easement D represented twenty-five percent of the bundle of rights and valued this taking at $1,187,344. Chanese ultimately concluded that the total value of Easements B and D was $1,953,833, and the total value of the two permanent easements and the two temporary easements was $2,463,300.

5

> Chanese also concluded that Hartz suffered severance damages because of the taking. He concluded that Permanent Easement D would affect the view by a portion of Estuary residents because Estuary would be in direct view of the netting chamber and capture vault. He concluded that this construction would translate to a three-percent reduction in the value of the entire property, or severance damages of $2,910,000. Therefore, he concluded the total value of the taking at $5,373,000.
>
> [North Hudson Sewerage Auth., slip op. at 3-5, 10-12.]

On May 20, 2016, the trial court issued a written opinion, finding the total value of the taking to be $569,774.61. It assessed a lower amount than both experts for Easement B. The court denied Hartz's request for severance damages. The order for final judgment and fixing just compensation was entered on June 24, 2016. Hartz appealed and we "reverse[d] and remande[d] with regard to the award for Easement B as well as severance damages for Estuary," concluding that "[t]he [trial] court should explain the foundation for its awards." North Hudson Sewerage Auth., slip op. at 19.

Following the remand, the trial court sent the parties to mediation, where they ultimately settled all issues except the quantum of severance damages to be paid to Hartz for any diminishment in value to Estuary. The court denied Hartz's request to reopen the record.

6

On March 15, 2019, the court issued its second opinion, after a thorough review of the evidence, including an assessment of the experts' varying viewpoints, reaffirming its original decision stating:

> [T]his court does not find that Hartz is entitled to severance damages because there is no appreciable adverse impact on the parent parcel . . . . Considering the testimony of each of the pertinent witnesses in light of the easement valuation matrix submitted by the parties, this court does not find that there is any credible evidence to prove that the property taken as Easement D represents anything other than a small easement for which there is no appreciable adverse impact on the parent tract.

Our standard of review of trial court findings after an evidentiary hearing is limited. Gnall v. Gnall, 222 N.J. 414, 428 (2015). Generally, the "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence" in the record. Ibid. When error is alleged, we do not disturb the findings unless we are "convinced that those findings and conclusions [are] 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

Questions of law, which we review de novo, will only be reversed if the error was "of such a nature as to have been clearly capable of producing an unjust result."

7

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); R. 2:10-2.

## I.

Hartz argues that the trial could erred by not following our directive that Hartz was entitled to severance damages. "It is the responsibility of a trial court to comply with the pronouncements of an appellate court." Jersey City Redevelopment Agency v. Mack Props. Co. No. 3, 280 N.J. Super. 553, 562 (App. Div. 1995). The trial court has a "peremptory duty . . . on remand, to obey the mandate of the appellate tribunal precisely as it is written." Ibid.

"In condemnation cases, severance damages are awarded only when there is a partial taking of a parcel of realty, the uncondemned parcel and the condemned parcel are functionally integrated, and there exists a unity of ownership." Union Cty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 150 (App. Div. 2007). Our Supreme Court, in State by Comm'r of Transp. v. Silver, 92 N.J. 507, 514 (1983), wrote:

> [W]here only a portion of a property is condemned, the measure of damages includes both the value of the portion of land actually taken and the value by which the remaining land has been diminished as a consequence of the partial taking. The diminished value of the remaining property constitutes the severance damages visited upon that property as a result of the taking.

We have recognized that among other factors, "every other jurisdiction which has considered this issue has held that loss of view, loss of access, loss of privacy and loss of use are compensable." City of Ocean City v. Maffucci, 326 N.J. Super. 1, 20 (App. Div. 1991).

We held here that the trial court erred because "Hartz demonstrated both unity of ownership and that the parcels were contiguous," and thus was "entitled to recover severance damages." North Hudson Sewerage Auth., slip op. at 19. The trial court had denied severance damages because it incorrectly found no unity of ownership. Id. at 17-18. It also found as a secondary reason that any loss to the view of an unspecified number of units in Estuary would be minimal and thus no severance damages were appropriate.

The trial court acknowledged during the case management conference that when rendering its original opinion, it "only went halfway because [it] did not believe that severance damages were appropriate for a legal reason."

In the thorough sixteen-page remand opinion, the trial court distinguished between its factual and legal reasoning for previously denying Hartz severance damages, explaining:

> This court previously concluded that severance damages were not appropriate factually because of a lack of proof of a "diminution in the total value of the property to justify an award." This court also held that the award of damages

9

was legally inappropriate because this court found a lack of unity of ownership. The Appellate Division disagreed with this court's legal conclusion holding that "the trial court's conclusion that there was no unity of ownership because . . . 'Estuary is owned by three different entities, with Hartz possess[ing] only a 92.5% interest in that property[] is incorrect." The Appellate Division did not, however, speak to the alternative factual conclusion made by this court and did not opine as to the correctness of that determination. This court assumes, therefore, that this remand is to permit that factual analysis.

Having accepted that Hartz was legally entitled to severance damages, the remand opinion focused on the trial court's factual determinations with the outcome "center[ed] squarely on the credibility assessments that [the] court [was] required to make as to the overall reasonableness of the positions taken by the parties." After summarizing each expert's testimony and NHSA's engineer's testimony, the court determined that "the position advanced by the NHSA [was] more credibly supported than the position adopted by Hartz" because Chanese: (1) neither supported his position "by market data nor any other objective framework"; (2) mischaracterized the design and placement of the platform; (3) rendered his position without having viewed or visited the property; (4) exaggerated the obstruction to the view; and (5) failed to introduce evidence of a physical intrusion or increased noise.

As correctly noted by the trial court, we did not require a new presentation of evidence, but rather ordered the trial court to reevaluate its reasons in light of its

10

legal error. The trial court abided by our remand directive in reconsidering the award of severance damages and making credibility judgments to ascertain the amount of the award.

## II.

Hartz also argues that the trial court committed reversible error when relying upon inadmissible "promissory representations" to determine whether severance damages should be awarded. Hartz contends that although "[t]he law makes clear that the measure of just compensation for a taking should not be determined by the easement holder's representations as to the purported frequency of the easement's use," the court "discounted the significance of Permanent Easement D" by considering the potential, not actual, impact.

Our Supreme Court recognized that "[t]o admit promissory representations of the condemnor's intention might well deprive a landowner of damages to which he [or she] is justly entitled on the mere expression of an intention to do something which might never be done." Vill. of S. Orange v. Alden Corp., 71 N.J. 362, 366 (1976) (quoting Vill. of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 130 (1958)).

While Hartz cites to those cases in support of its argument, it overlooks the fact that in Village of South Orange, our Supreme Court stated:

> [T]he fact that South Orange intended to use the land taken
> as a municipal parking lot was admissible in evidence. It

was something of which the trier of fact should take account. The point made in Sreel, which we repeat here, is that there exists no guaranty that the municipality will continue to devote the land to this purpose for any definite period of time. Testimony would be appropriate, if otherwise admissible, as to the probable length of time the use might continue. This factor–uncertainty of duration–should be in the mind of the judge and should be explained to the jury. With this caveat in mind, there is clearly here no reason to exclude consideration of the use to which the plaintiff intends to put the condemned parcel.

[Id. at 368.]

When the government takes private property for public use, it must pay just compensation to the property owner. U.S. Const. amend. V; N.J. Const. art. I, ¶ 20. "Just compensation is 'the fair market value of the property as of the date of the taking, determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act.'" Comm'r of Transp. v. Caoili, 135 N.J. 252, 260 (1994) (quoting State v. Silver, 92 N.J. 507, 513 (1983)). While "all reasonable uses of the property bear on its fair market value," the "most relevant . . . is the property's highest and best use." Ibid.

"[H]ighest and best use" . . . is broadly defined as "the use that at the time of the appraisal is the most profitable, likely use" or alternatively, "the available use and program of future utilization that produces the highest present land value" provided that "use has as a prerequisite a probability of achievement."

> [County of Monmouth v. Hilton, 334 N.J. Super. 582, 587 (App. Div. 2000) (quoting Ford Motor Co. v. Township of Edison, 127 N.J. 290, 300-01 (1992))].

We stated in our 2018 opinion that the trial court:

> found that "the land on which the platform is to be constructed has very little, if any, development potential" because of the "presence of the existing sewer outfall" and the "allowable density of the development" would not be reduced. It continued: "The Court acknowledges that the permanent easement D may create a slight visual impediment of the New York City skyline by a few of the occupants of the Estuary." It recognized the "decorating scheme" would help "blend in" the "apparatus." Furthermore, it found the "periodic presence of the boom truck would be negligible because of the expressed lack of frequency of the use of this equipment."
>
> [North Hudson Sewerage Auth., slip op. at 14.]

Given that the highest and best use analysis allows the court to consider the "likely use," and need not consider the "most injurious use," Hartz's contention is unpersuasive.

## III.

Hartz maintains that the trial court erred in denying its request to conduct an evidentiary or plenary hearing to supplement the record. Because the parties were not allowed to reopen the record, Hartz asserts the trial court's reconsideration was based on the "unfairly skewed" 2016 record, which was "based upon an improper application of the law." Rather, the court should have allowed the record to be

A-3469-18T4

supplemented with a new opinion from an expert on behalf of NHSA that considers the existence of the unity of ownership. Hartz asks us to authorize supplementing the record or to order a new trial before a different judge.

During the case management conference, Hartz raised the same arguments. Hartz argued that "an award of just compensation [requires] an assessment of whether there are severance damages and, if so, what they are." Because only one side presented such evidence, Hartz opined that "justice" requires the record to be reopened for NHSA to present its own evidence. The trial court disagreed, emphasizing that NHSA already made its determination as to severance damages.

As correctly noted by the trial court, we did not order a reopening of the record or new trial. NHSA had no obligation to retain a new expert to opine in more detail about severance damages.

## IV.

Hartz argues that the trial court erred when finding that Beisser was more credible than Chanese. Because only Chanese offered detailed testimony as to the quantity of severance damages in his direct testimony, Hartz contends the court's credibility judgment was flawed.

The court, as a factfinder, "may accept some of the expert's testimony and reject the rest. That is, a factfinder is not bound to accept the testimony of an expert

A-3469-18T4

witness, even if it is unrebutted by any other evidence." <u>Torres v. Schripps, Inc.</u>, 342 N.J. Super. 419, 430-31 (App. Div. 2001) (citation omitted).

The trial court thoroughly explained why it found Beisser more credible than Chanese with regard to severance damages. Because the court's findings are supported by "adequate, substantial, credible evidence," reversal is not warranted. <u>Gnall</u>, 222 N.J. at 428.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION