VILLAGE OF RIDGEWOOD, PLAINTIFF-RESPONDENT, v. SREEL INVESTMENT CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued September 22, 1958—Decided October 20, 1958.

122

*Mr. Milton T. Lasher* argued the cause for defendant-appellant.

*Mr. Samuel Doan* argued the cause for plaintiff-respondent (*Mr. William E. Reinhardt,* attorney; *Mr. Aaron Dines* on the brief).

The opinion of the court was delivered by

PROCTOR, J.   The Appellate Division affirmed a judgment of the Law Division entered upon a jury award of $8,200 as compensation for the taking of a part of defendant's property by the plaintiff municipality in the latter's exercise of its power of eminent domain.   *N. J. S. A.* 40:60–25.1; *N. J. S. A.* 20:1–1 *et seq.*   On the defendant's petition we granted certification.   27 *N. J.* 73 (1958).

The defendant corporation was the owner of a plot of land fronting on the westerly side of Oak Street in the Village of Ridgewood.   The property and the surrounding area are zoned and occupied for business purposes.   The property had a frontage of 75.40 feet, a depth of 150 feet and a rear width of 75.38 feet.   A brick building containing four stores, which are leased by the defendant to tenants, occupies the entire front of the lot.   The store on the extreme south of the building is 30 feet in width and 70 feet in depth; the one next to it is 15 by 70 feet and the other two toward the north end are each 15 by 50 feet.   Each store has a

rear door and a cellar, access to which may be had only through the rear. Access to the rear is gained by defendant's right of way in a 14-foot-wide alley which runs along the southerly side of the building from Oak Street to the rear line of the lot. The rental from these stores brings the defendant an annual gross income of $7,500.

The municipality adopted an ordinance authorizing the acquisition by condemnation or other lawful means of a number of parcels of land, including rights of way, for the purpose, as stipulated, of making "the lands available to the public for the public parking of vehicles or for other public uses or purposes." Among the properties enumerated in the ordinance was the rear 70 feet of the defendant's lot. The taking of this part of defendant's property occurred on June 22, 1956, leaving the defendant with a lot 75.40 feet in width and 80 feet in depth. The open space in the rear of defendant's building was thereby reduced to 10 feet in depth behind its two stores at the southerly end and 30 feet in depth behind the others. At the corner of the take-line ten feet back of the southerly end of the building the elevation of the portion condemned is two feet higher than defendant's remaining property. Moving north the height gradually diminishes until it becomes level with the defendant's remaining land on the northerly end. A retaining wall which slopes with this decline is located along this line. Also condemned was the easement of the defendant and others in the 14-foot alley for use as a public right of way.

Pursuant to the procedure under *N. J. S. A.* 20:1-1 *et seq.,* condemnation commissioners were appointed. From their award of $16,450 the defendant appealed and the village cross-appealed. On a trial in the Law Division the jury rendered a verdict for the defendant in the amount of $8,200 for the land taken and "no award for consequential damages." Defendant's motion for a new trial was denied.

On this appeal the defendant first argues that the jury's finding of no consequential damages deprived it of just compensation in the "constitutional sense." *N. J. Const.* 1947, *Art.* I, *par.* 20; *U. S. Const., Amend* XIV.

■ Where only a part of an owner's land is taken he is entitled to be compensated not only for the value of the land taken but also for any diminution in the value of his remaining land which may be attributed to the taking. *Sterner v. Nixon,* 116 *N. J. L.* 418 (*E. & A.* 1936); *State Highway Commissioner v. National Fire Proofing Corp.,* 127 *N. J. L.* 346 (*E. & A.* 1941); *Tennessee Gas Transmission Co. v. Maze,* 45 *N. J. Super.* 496 (*App. Div.* 1957). However, it is entirely conceivable that under certain circumstances severance will not effect a change in the value of the remaining portion of an owner's property. See *In re Parking Authority of City of Hackensack,* 30 *N. J. Super.* 534 (*App. Div.* 1954). In the light of our ultimate determination that certain errors committed at the trial will require a reversal, it is unnecessary for us to decide whether the jury's finding of no consequential damages deprived the defendant of its property without just compensation.

The most significant of the trial errors which the defendant complains were prejudicial relates to the court's charge to the jury as to the relationship between the part taken and the remainder of the property.

Defendant called Smith and Schwenn as its experts. They testified that the rear of the property (the part taken) had been used as a parking lot by the defendant in which it rented space on a monthly basis and from which it received an annual gross income of $1,272. Four spaces were reserved without charge for tenants occupying defendant's stores. In addition, this area was used for access to the rear delivery entrances to the stores. According to these witnesses, the taking of this land would result in a diminution in the value of the defendant's remaining property because of the following factors: (1) the elimination of possible future expansion of the building; (2) the difficulty of making rear-door deliveries to the stores; (3) the loss of rear parking privileges by the tenants; (4) the loss of the private right of way in the alley for the tenants' convenience; (5) the impossibility of turning a truck or automobile at a right angle from the alley into the remaining 10-foot

space behind the building, and (6) because of the foregoing, the creation of an undesirable substandard property which would lessen its attraction to future tenants with a resulting loss in rentals. It was admitted by the defendant that the store tenants' written leases did not expressly provide for the privilege of parking or using the rear area for deliveries.

Smith stated that he valued the entire tract at $75,000 before the taking and $50,350 after the taking, or a difference for the taking and the consequential damages of $24,650. Of the last amount he attributed $16,000 to the land actually taken. Schwenn estimated the entire property to be worth $73,500 before the taking and $43,800 afterwards, or a loss of $29,700. Both experts based their computations on the theory that prior to the taking defendant's lot was a functional entity with the value of the building partially dependent upon the availability of the vacant area in the rear.

The plaintiff's experts, Bogert and Clark, testified that in their opinion there was no damage to the remainder of the property as a result of the taking and that the defendant's sole loss was the value of that part of the land actually condemned. Bogert valued the land taken at $7,230 on a replacement-less-depreciation basis, and at $7,600 on a capitalization-of-income basis. Clark, using the same methods, arrived at valuations of $7,230 and $8,160, respectively. Their conclusion that there was no consequential damages was based upon their opinion that the rents for the remainder would be the same following the taking as before; that access to the rear of the defendant's stores would in no way be impaired and might well be improved; and, as stated by Bogert, "the possibility of a second front door in the rear." The last statement undoubtedly referred to the opportunity for customer access to defendant's stores from the proposed parking lot.

In charging the jury the trial court, after adequately setting forth the appropriate standard of damages, proceeded to state:

"The highest and best use of a particular parcel of land might require the entire parcel for one use, or for a related or connected use. For example, you are all familiar with super-markets. The building, the market place, occupies a portion of the land, and there is a parking area for the customers. However, the entire parcel is occupied for the use of a market place and for the related use of the parking of automobiles of the customers who go to that market place. In that event, when the entire parcel is being used for its highest and best use, every part of the entire parcel of land is used in conjunction with the whole. In other words, there is a functional relationship between every part of the parcel of land, and the highest and best use requires that every part of the parcel be for that purpose, or for a purpose and its related purposes; and in that event, the parcel of land cannot be divided without destroying the highest and best use for which the entire parcel is available. If, therefore, a part of the parcel is taken, the remaining portion would suffer a diminution in value, because the remaining portion would not be available for the highest and best use to which the whole had been put and, therefore, the remaining portion would not be as productive proportionately as it would have been as a part of the whole.

However, a parcel of land, in order to put it to its highest and best use, may require its division into parts, and then the income from the several parts, independent of each other, would produce the highest amount of rentals. That often happens when a farm is bought and subdivided into building lots. Building lots collectively bring more than the farm as a whole used for farming purposes would bring. When that happens, where a parcel of land is used in parts and by that means it produces the highest income, and then a part is taken without damaging the other part, there is no diminution in value to the remaining parcels.

That is the problem that we have here. In this case we have four written leases for the stores located on the front of this property. Those tenants have no right to occupy the rear, and the rear is not used in connection with the stores. The rear, according to the evidence, has been leased to, I think, six tenants, who have the right to occupy it with something like 21 or 27 automobiles. Those tenants use it for parking purposes of their cars. I mean, not the tenants who occupy the front, but who occupy only the rear. *And there is no relation between the use of the property which is being taken and the front portion, the remainder; no relation in its use, no relation in its productive value. The uses are independent of each other. There is no functional relationship between the front and the rear. One part does not compensate the other part, as a supermarket with its parking lots does. So far as I can see, that is the evidence in this case insofar as* the use of this property is concerned." (Italics supplied)

The court then summarized the testimony of the defendant's experts and said of Smith, "if there was no functional

relationship between the rear use of the property and the front use of the property, he has not followed a foundation of reasoning that supports a logical conclusion. If you come to the conclusion that his opinion is not based on proper reasoning, you have a right to disregard it entirely." The court next stated that Schwenn had followed the same process of reasoning and that "if his approach to this problem is illogical under the facts of this case, you have a right to disregard his entire opinion."

The defendant, having made timely objection to the italicized portion of the charge, argues the instruction eliminated from the jury's consideration the issue of whether there was a functional relationship between the land taken and the property remaining.

The court's allusion in its charge to the supermarket gave a clear example of a parcel of land every part of which is functionally related. The reference to the building lots was an equally clear example of parts of land that are functionally independent. The jury was told that in the former situation "the remaining portion would suffer a diminution in value," while in the latter "there is no diminution in value to the remaining parcels." By then informing the jury that in the present case "there is no functional relationship between the front and the rear" the charge may well have settled in their minds that the severance of defendant's property was the same as the example of the building lots and therefore there could be no consequential damages. This was contrary to the factual testimony as well as the opinions expressed by the defendant's expert witnesses that the part taken was functionally related to the remainder.

■■ A trial judge may comment on the evidence and frequently it is his duty to do so, provided it is to assist and not to control the jury's findings. *Wilcox v. Christian & Missionary Alliance,* 124 N. J. L. 527, 530 (*E. & A.* 1940); *Hare v. Pennell,* 37 N. J. Super. 558, 566 (*App. Div.* 1955). However, he should use great care that an expression of an opinion upon the evidence should be given so as not to

mislead the jury; deductions and conclusions not warranted by the evidence should be studiously avoided. *Quercia v. United States,* 289 *U. S.* 466, 470, 53 *S. Ct.* 698, 699, 77 *L. Ed.* 1321, 1325 (1933). In the present case the trial judge flatly stated that no functional relationship existed and he pointed this up by the hypothetical examples discussed above. Having told this to the jury he then substantially destroyed the effect of the defendant's expert testimony by instructing them that they could find it worthless if there was no functional relationship between the condemned and non-condemned portions of the lot, an issue which he had already resolved. But the resolution of this issue was solely the function of the jury as it required a weighing of conflicting expert testimony. If the jury believed the testimony given on behalf of defendant, they could have found that a functional relationship existed and that defendant sustained consequential damages as a result of the severance. It was not within the court's province to negate such evidence and in effect withdraw it from consideration by the jury. See *Skupienski v. Maly,* 27 *N. J.* 240, 247 (1958). The part of the charge objected to was more than comment upon the testimony and, when taken in context, it is likely that the jury was misled into believing that only the value of the land actually taken was properly within the range of their consideration. This was prejudicial to the rights of the defendant and requires a reversal.

As there must be a new trial, it is appropriate to comment on several additional points alleged by the defendant as error. ▮ Over the defendant's objection the plaintiff was permitted to introduce into evidence a plan captioned "Tentative Parking Layout," prepared by the village engineer at the request of one of the village commissioners, depicting a manner in which the defendant's property along with others taken could be used as a municipal parking lot. This plan showed that an 18-foot area of the property taken adjacent to the rear of defendant's stores was to be left vacant for their use as a loading zone. The engineer admitted that

this proposal merely represented the thinking of one commissioner and reflected no official action. The court in permitting the plan to be introduced into evidence told the jury:

"* * * I am admitting this into evidence merely so that you may see one way in which this parking lot might be laid out. This is not at all binding on the property owner or on the Village, because there may be other ways of laying it out, and this way of laying it out may not be the manner in which it is finally adopted, but I think it will help you in your consideration of the entire problem and how this property might be developed. You are not confined to this. You may consider from your own point of view what are the probable results of the effect on the property in any other way that the property might be laid out for parking."

This admonition merely served to highlight the irrelevancy of the evidence. Not only was the village at liberty to construct a parking lot in a manner other than that represented by the plan, but it could use the property for any other public purpose. In *Hepburn v. North Jersey, etc., Comm.,* 100 *N. J. L.* 148 (*E. & A.* 1924), the condemnor's expert was permitted to testify that the taking of a part of the owner's property for the construction of an aqueduct would be advantageous to the remaining part based on his observation of another aqueduct. Photographs of the other aqueduct were also admitted. On appeal it was held that this testimony and the admission of the photographs were improper because the condemning authority was in no way bound to use the land for the construction of an aqueduct but could use it "in any lawful mode," and that there were "many purposes to which the [land] acquired could be put which would damage the remainder." To admit promissory representations of the condemnor's intention might well deprive a landowner of damages to which he is justly entitled on the mere expression of an intention to do something which might never be done. *Pursiful v. Commonwealth,* 212 *Ky.* 690, 279 *S. W.* 1106 (*Ct. App.* 1926); and see cases collected in 7 *A. L. R. 2d* 364 (1949).

In the present case it was improper for the jury to consider any representations that a loading zone would be provided

for the defendant's use. The defendant was entitled to have its damages assessed on the basis that the condemnor would use the property taken to the full extent. *Butler Hard Rubber Co. v. City of Newark,* 61 *N. J. L.* 32 (*Sup. Ct.* 1897); *Henderson v. City of Orange,* 9 *N. J. L. J.* 71 (*Sup. Ct.* 1886); see also *Packard v. Bergen Neck Ry. Co.,* 54 *N. J. L.* 553, 563 (*E. & A.* 1892). And although the court cautioned the jury as to the limited purpose for which the plan was being admitted, we believe that its possible prejudice to the defendant in tending to eliminate an element of its consequential damages outweighed any aid it may have been to the jury in its consideration of the problem.

██ Defendant next argues that it was improper for the plaintiff to ask one of its experts "whether or not benefits will accrue to adjoining property owners from the creation and maintenance of a municipal owned parking lot of this kind, graded, lighted and maintained by the municipality." Over the defendant's objection the expert was permitted to give an affirmative answer. This question clearly was directed to what may be termed "general benefits" or benefits which the defendant may enjoy in the future in common with all other property owners in the neighborhood as a result of the proposed improvement. *Mangles v. Hudson County Board of Chosen Freeholders,* 55 *N. J. L.* 88, 92 (*Sup. Ct.* 1892). Our eminent domain legislation, *N. J. S. A.* 20:1-1 *et seq.,* under which plaintiff is proceeding, does not provide that benefits are to be considered in arriving at an award, except in the limited situation where an assessment is to be levied, in which case it may be set off against any award rendered. *N. J. S. A.* 20:1-33. In addition, our cases have uniformly held that general benefits may not be considered to reduce the damages which an individual property owner will sustain from the taking of a portion of his property. *State v. Miller,* 23 *N. J. L.* 383 (*Sup. Ct.* 1852); *Mangles v. Hudson County Board of Chosen Freeholders, supra; Clausen v. Village of Ridgefield,* 91 *N. J. L.* 238 (*E. & A.* 1917); see also *Robinson v. Borough of Edgewater,* 98 *N. J. L.* 205 (*E. & A.* 1922). There is no reason why a man whose land is taken

for a public improvement should be made to contribute more for the public and common benefit than his neighbor, whose lands are not taken but who is equally benefited by the improvement. *State v. Miller, supra.* Defendant's objection to the question noted should have been sustained.

■ Defendant also alleges as error the court's refusal to charge his Request Number 2. This has no merit. The court's charge adequately instructed the jury on the general principle of law embodied in that request. It is not necessary that the defendant's precise language be employed. *Tumarkin v. Goldstein,* 33 *N. J. Super.* 46, 53 (*App. Div.* 1954).

■ Finally, the defendant contends it was prejudiced by the trial court's lengthy examination of the witness Schwenn after his direct and cross-examination had been concluded. The trial judge may question a witness in order to clarify existing testimony or to elicit further information from him. *State v. Aeschbach,* 107 *N. J. L.* 433 (*E. & A.* 1931); *In re Parking Authority of City of Hackensack, supra.* Indeed, this appears a desirable procedure where in his discretion he considers it necessary. 3 *Wigmore, Evidence,* § 784 (3d ed. 1940). However, as stated by Judge Gaulkin in *Polulich v. J. G. Schmidt Tool Die & Stamping Co.,* 46 *N. J. Super.* 135, 144 (*Cty. Ct.* 1957), "* * * the power to take an active part in the trial of a case must be exercised by the judge with the greatest restraint, especially before a jury." There is a point at which the judge may cross that fine line that separates advocacy from impartiality. When that occurs there may be substantial prejudice to the rights of one of the litigants. In the present case it appears that the trial judge was seeking to clarify a rather technical phase of the witness' testimony, but it is unfortunate that the interrogation was protracted and somewhat argumentative. However, since there must be a reversal for the reasons we have set forth above, it is unnecessary for us to determine whether defendant's rights were prejudiced thereby.

The judgment of the Appellate Division is reversed and the cause will be remanded for a new trial.

HEHER, J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.