**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2271-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDREA M. CARMICHAEL,
a/k/a ANDRE M. CARMICHAEL,

    Defendant-Appellant.

_____

        Argued May 26, 2021 – Decided June 17, 2021

        Before Judges Alvarez and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 16-01-0051.

        Howard Pashman, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Howard Pashman, on the briefs).

        Valeria Dominguez, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Valeria Dominguez, of counsel and on the brief).

PER CURIAM

Defendant Andrea M. Carmichael appeals from a September 24, 2018 judgment of conviction after a jury found him guilty of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1), and a judge found him guilty of one disorderly persons offense of possession of marijuana, N.J.S.A. 2C:35-10(a)(4). Defendant focuses his challenge on the denial of his pretrial motion to suppress evidence. Having reviewed the record, and considering the applicable law, and vacate the conviction, we reverse.

We derive the following facts from the testimony at the suppression hearing. At approximately 8:50 a.m. on October 1, 2015, Officer Matthew Principato of the Deptford Township Police Department was patrolling the area around Delsea Drive. Delsea Drive is an undivided roadway with a single lane in the northbound direction that eventually splits. A driver could either continue straight on Delsea Drive, make a slight right turn towards Interstate 295-North, or make a sharp right turn on Cutler Drive. Principato purportedly observed defendant make a slight right turn onto the 295-North ramp without signaling, N.J.S.A. 39:4-126. At the time, defendant was not speeding, nor did he commit any other traffic violations.

Notwithstanding the fact that Principato reviewed his report in anticipation of the suppression hearing, he was unsure whether he was stationary or if he was driving northbound on Delsea Drive behind defendant's vehicle. In fact, Principato could not recall what make or model vehicle defendant was driving. Principato could not remember whether there was other traffic on the roadway at the time. He had no recollection of whether the windows of defendant's vehicle were open.

Solely on the basis of defendant's failure to signal, Principato conducted a motor vehicle stop. When Principato approached the vehicle, he smelled "a strong odor of marijuana coming from inside the vehicle." Principato made contact with defendant, the sole occupant of the vehicle, who informed him that he did not have his license. After defendant provided his name, Principato went back to his patrol vehicle and relayed this information to dispatch, who informed him that defendant had a suspended license.

After two other officers arrived on scene, Principato again approached the vehicle and asked defendant to step out. He then questioned defendant as to the smell of marijuana emanating from the vehicle, and defendant told Principato that he smokes marijuana on occasion. Principato did not recall if he asked defendant any other questions. Based on the smell and this admission, he

3

conducted a search of the vehicle, locating four vials of suspected marijuana in the center console. At that point, Principato placed defendant under arrest and, while searching defendant's person, located a fifth vial of suspected marijuana in his pocket. He could not remember in which pocket the fifth vial was located. The vials of suspected marijuana were ultimately sent to the lab for testing and three were determined to be marijuana blended with Phencyclidine (PCP).

On January 20, 2016, a Gloucester County grand jury returned an indictment charging defendant with third-degree possession of CDS. Defendant was also issued a summons charging him with the disorderly persons offenses of possession of fifty grams or less of marijuana and possession with intent to use drug paraphernalia, N.J.S.A. 2C:36-2.[1]

Defendant filed a motion to suppress, arguing that Principato had no legitimate basis to conduct a motor vehicle stop. After the suppression hearing, the motion judge determined that the parties failed to adequately address the issue of whether defendant's violation of N.J.S.A. 39:4-126 "may" have affected traffic. Therefore, and over defense counsel's objection, the judge re-opened testimony for that limited purpose.

---

[1] In addition, defendant received summonses for two traffic violations.

A-2271-18

At the re-opened hearing, the judge, apparently realizing that the prosecutor still did not adduce the requisite testimony to justify the initial motor vehicle stop, questioned Principato extensively on the issue of whether defendant's failure to use his turn signal "may" have affected his movements. We highlight the relevant portion of the colloquy:

> [THE COURT:]  Officer, the day was October 1[ ] if you'll recall?
>
> [WITNESS:]  Yes, sir.
>
> [THE COURT:]  Okay.  Now reaching back . . . two years from now, do you recall whether it was . . . a weekday or a weekend?
>
> [WITNESS:]  I don't recall, Judge, –
>
> [THE COURT:]  Okay.
>
> [WITNESS:]  – what date – what that date was exactly.
>
> [THE COURT:]  Okay.  Now a mile south of that location is St. John Academy, correct?
>
> [WITNESS:]  Correct.
>
> [THE COURT:]  Buses, school buses during the weekday going in and out of that location, correct?
>
> [WITNESS:]  Yes, sir.
>
> [THE COURT:]  Further down Delsea Drive into Westville you hit Parkview Elementary School?

5

[WITNESS:]  Yes, sir.

[THE COURT:]  If it's a school day, 8:50 in the morning is a fairly active time in that area?

[WITNESS:]  Yes, sir.

[DEFENSE COUNSEL:]  Objection to leading.  Sorry, Your Honor.

. . . .

[THE COURT:]  Do you find that that's based upon your experience of patrolling that area, that's a fairly well used ramp?

[WITNESS:]  Correct.  Yes, sir.

[THE COURT:]  All right.  Now with regard to October 1[ ], . . . you testified . . . that . . . defendant's movement could have impacted your movement?

[WITNESS:]  Correct.

[THE COURT:]  Describe for me how it could have impacted it.

[WITNESS:]  Now if I'm behind the vehicle . . . [and] if he were to continue straight and I were to continue following him straight, he stays straight on Delsea Drive.  His movement to get onto the highway and I'm planning on continuing straight or whatever my option would have been, if he suddenly makes that turn . . . onto 295, now I have to maneuver around him without knowing that from his signal.

[THE COURT:]  Uh-huh.

6

[WITNESS:] I'm not saying that happened that day, but it potentially could have happened.

[THE COURT:] What . . . if someone utilizes his signal and you're driving behind them, what benefit is that to you as the driver behind him?

[WITNESS:] Now I know which direction he plans on going. I know that he wants to make that movement onto the highway, into the industrial plaza, or perhaps even maybe into a residential home right there. The signal . . . makes me know what his next course of action is going to be.

        . . . .

[THE COURT:] And when . . . an individual does not utilize their signal, and begins to move away from a sort of straight line of movement of traffic, . . . what does that do to you as the driver behind him?

[WITNESS:] Well, I mean, . . . it's affecting my movement as if when I'm going forward, if he's going to go slightly to the right, turn right, or whatever, again, it's going to prevent me from not colliding with the rear of his vehicle –

[THE COURT:] Uh-huh.

[WITNESS:] – potentially.

Following the hearings, the judge issued a nineteen-page written opinion denying defendant's motion to suppress. The judge found Principato to be a "credible" and "disinterested witness." He concluded that Principato conducted a valid motor vehicle stop after observing defendant turning onto the entrance

7

ramp of 295-North without signaling. The judge, crediting Principato's testimony, found that the failure to use a turn signal "may" have impacted his movement because it was unclear if "defendant was actually turning or [if] he [was] drifting due to inattentiveness, illness or mechanical issues."

At the conclusion of trial, the jury found defendant guilty of third-degree possession of a CDS. After the jury was discharged, the judge addressed the remaining charges. The judge found defendant guilty of possessing less than fifty grams of marijuana. The judge then dismissed the possession with intent to use drug paraphernalia offense. After the judge granted the State's request to impose a discretionary extended term, N.J.S.A. 2C:44-3(a), defendant was sentenced to six years' imprisonment, subject to a two-year period of parole ineligibility. This appeal ensued.

We apply a highly deferential standard of review to a trial judge's factual findings on a motion to suppress. State v. Gonzales, 227 N.J. 77, 101 (2016) (citing State v. Hubbard, 222 N.J. 249, 262 (2015)). We are bound to uphold the factual findings underlying the trial judge's decision, provided that those findings are "supported by sufficient credible evidence in the record." State v. Scriven, 226 N.J. 20, 40 (2016). We can reject the motion judge's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention

and correction.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "Those factual findings are entitled to deference because the motion judge, unlike an appellate court, has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Gonzalez, 227 N.J. at 101 (quoting Johnson, 42 N.J. at 161). "We need not defer, however, to a [motion judge's] interpretation of the law." State v. Vargas, 213 N.J. 301, 327 (2013).

On appeal, defendant contends that we should reject the judge's interpretation of N.J.S.A. 39:4-126 "because it would lead to the unintended result that [every] failure to signal a lane change or turn would result in a violation" so long as the officer testifies that the violation "potentially could have affected his driving." Defendant requests that we read into the statute a requirement that a failure to turn actually affects the officer's movements. We decline to do so.[2]

---

[2] We believe that "[t]he Legislature, not the courts, is best suited to address such policy arguments." Cnty. of Bergen Emp. Benefit Plan v. Horizon Blue Cross Blue Shield of N.J., 412 N.J. Super. 126, 139 (App. Div. 2010); see also State v. Moss, 277 N.J. Super. 545, 547 (App. Div. 1994) ("[W]here the language of a law is clear, courts are not free to replace it with unenacted legislative intention, for to do so leads the judiciary into undemocratic law making.").

"To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40 (2002)). Reasonable and articulable suspicion is a "lower standard" than probable cause, State v. Stovall, 170 N.J. 346, 356 (2002), and requires a court to evaluate the totality of the circumstances, State v. Alessi, 240 N.J. 501, 518 (2020) (citing State v. Pineiro, 181 N.J. 13, 22 (2004)).

Here, the relevant Title 39 infraction provides:

> No person shall . . . turn a vehicle from a direct course or move right or left upon a roadway, or start or back a vehicle unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.
>
> [N.J.S.A. 39:4-126.]

This court recognized in State v. Moss that an officer may rely on N.J.S.A. 39:4-126 to make a lawful motor vehicle stop even if the only vehicle that may be affected by the driver's failure to make an appropriate turn signal is the police car behind it. 277 N.J. Super. 545, 547 (App. Div. 1994). Indeed, our Supreme

Court later held that "other traffic" can include a police vehicle. State v. Williamson, 138 N.J. 302, 304 (1994).

The State "need not establish that the move actually affected traffic," nor does the State need to "prove that a motor-vehicle violation occurred as a matter of law." Ibid. The plain and unambiguous language of N.J.S.A. 39:4-126 does "not project a requirement that a turn movement must affect other traffic but merely that it has the potential of doing so." Moss, 277 N.J. Super. at 547; see also Williamson, 138 N.J. at 304.

Here, the motion judge apparently recognized that Principato's initial testimony was inadequate to establish that defendant's un-signaled turn "may" have affected Principato's movement, which necessitated a second hearing on that limited issue. Even so, we conclude that the record does not support a finding that defendant's failure to utilize his turn signal "may" have affected Principato's movement. Because no other vehicles were apparently on the road when defendant made the turn, the only "other traffic" that could have been affected was Principato's own vehicle. See Williamson, 138 N.J. at 304. Principato's testimony was predicated on nothing more than speculative hypotheticals that had no factual basis in the record. Contrary to the judge's line of questioning, there was no allegation that defendant's vehicle had drifted, that

Principato had to unexpectedly brake, or that he had to maneuver to avoid defendant's vehicle in any way. Based on this record, there is simply no basis for concluding that defendant's failure to use his turn signal even had the potential of affecting Principato's movement.

We acknowledge that a judge, pursuant to N.J.R.E. 614(b), may examine witnesses to clarify testimony, aid the court's understanding, elicit material facts, and assure the trial is conducted efficiently. State v. Medina, 349 N.J. Super. 108, 131 (App. Div. 2002). Here, however, the motion judge engaged in a lengthy colloquy with Principato wherein he interposed suggestive and leading questions. A judge must avoid crossing "that fine line that separates advocacy from impartiality. When that occurs there may be substantial prejudice to the rights of one of the litigants." Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 132 (1958).

To be sure, to prove the officer possessed an articulable and reasonable suspicion for making the vehicle stop, the State was not required to prove a violation of N.J.S.A. 39:4-126 beyond a reasonable doubt. State v. Locurto, 157 N.J. 463, 470 (1999); see also Williamson, 138 N.J. at 304. Notwithstanding the fact that the motion judge found Principato to be credible, the record in this case is devoid of any indication that his movements "may" have been affected

due to defendant's failure to use his turn signal. Thus, Principato did not possess a reasonable and articulable suspicion that defendant had committed a motor vehicle violation, and the fruits of the subsequent search must be suppressed.

We are therefore constrained to reverse the order denying defendant's motion to suppress and vacate the judgment of conviction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2271-18