# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2158-22

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

A.M.W.,

    Defendant,

and

R.B.,

    Defendant-Appellant/
    Cross-Respondent.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
H.N.B., a minor,

    Cross-Appellant.

_____

Argued October 1, 2024 – Decided October 28, 2024

Before Judges Sumners, Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0062-22.

Meghan K. Gulczynski, Assistant Deputy Public Defender, argued the cause for appellant/cross-respondent (Jennifer Nicole Sellitti, Public Defender, attorney; Meghan K. Gulczynski, on the brief).

Renee Greenberg, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Renee Greenberg, on the brief).

David B. Valentin, Assistant Deputy Public Defender, argued the cause for minor/cross-appellant (Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; David B. Valentin, of counsel and on the brief).

PER CURIAM

Defendant R.B. (Ray)[1] appeals the May 13, 2021 Family Part order terminating his parental rights to his then seven-year-old son H.N.B. (Henry).[2]

---

[1] We use initials and fictitious names for the parents and children to protect their privacy and the confidentiality of the record. R. 1:38-3(d)(12).

[2] The parental rights of Harry's mother, A.M.W. (Adele), were terminated by default, which she does not appeal.

Ray contends the judge improperly advocated for the Division when questioning him and a DCPP caseworker, and by objecting to questions posed by his counsel. Ray argues the trial judge denied him due process by taking judicial notice of factual findings the judge made in a prior guardianship trial two years earlier. The judge rejected the Division of Child Protection and Permanency's (Division) parental termination plan because there was no permanent placement for Henry. In addition, Ray argues the Division failed to prove the four prongs of the best interests of the child test. See N.J.S.A. 30:4C-15.1(a). Because we agree with Ray that his due process rights were violated, we reverse the order terminating Ray's parental rights.[3] Consequently, we do not address his best interests arguments.

I

Given our reversal on procedural grounds, it is unnecessary to detail the evidence presented by the Division to prove that termination of Ray's parental

---

[3] The Law Guardian cross-appealed, opposing the termination of Ray's parental rights. However, at oral argument, the Law Guardian advised the court that it would not be arguing its position based on their client's wishes. The Law Guardian subsequently filed motions withdrawing its cross-appeal and cross-appellant's brief and waiving oral argument. We granted the motions on November 17, 2024.

A-2158-22

rights was in Henry's best interest.  Accordingly, we focus solely on Ray's due process arguments.

The backdrop to Ray's appeal arose from the first guardianship trial, which took place in May 2021.[4]  The Division called its adoption caseworker Shaquel Scott and its psychological expert.  Ray did not testify.  In an oral opinion, the judge denied the Division's termination plan of Ray's parental rights because it had no permanent placement for Henry.  In response to the Division's request, the judge's May 13, 2021 order provided:  "The Division puts all parties on notice that at any future trial it may seek to rely on and ask the [c]ourt to accept and adopt the findings of facts and conclusions of law made by the [c]ourt in its decision today."  (Emphasis added).

At the beginning of the next guardianship trial on March 1, 2023, the judge reminded the parties that he had "presided over this case for three years" and had entered an opinion detailing the issues.  After the Division completed its case through the testimony of Henry's resource parent, the Division's adoption

---

[4]  Following a permanency hearing on December 19, 2019, the trial judge denied the Division's plan of terminating Ray's and Adele's parental rights followed by adoption.  The judge extended the protective services litigation to give Henry's parents "the opportunity to complete the services provided to them." Unfortunately, neither parent successfully engaged in services and the judge approved the Division's plan of termination of parental rights followed by Henry's adoption at the next permanency hearing on January 15, 2020.

4                                                                          A-2158-22

worker and its psychological expert, the Division asked the judge to take judicial notice of the litigation orders in prior FN and FG matters, "as well as the previous orders in this guardianship matter," "specifically . . . the findings of fact that [the judge] made previous[ly] in the guardianship trial that took place under FG-07-88-20." The Division did not proffer documentation from the first trial, such as transcripts, to establish the prior evidence utilized, or the earlier findings made by the judge. The judge granted the request, overruling Ray's and the Law Guardian's objections. The judge explained: "any decision I make today, I am going to consider them again because those facts are contained in the evidence that we have here as well and there has certainly been no presentation at this point of any facts that are different." The judge further explained he was "not going to admit [those facts] as . . . the law of the case or in any way think there's an estoppel for anyone to raise a different argument. But I'm [going to] admit them as requested."

At the conclusion of the next day's testimony and summations, the judge issued an oral opinion and order terminating Ray's parental rights. The judge found the Division's witnesses credible and defendant not credible and ruled the Division had proven by clear and convincing evidence all four prongs of the best interests of the child test so that Henry could be adopted by his resource parent.

5

## II

## Judicial Bias

Defendant contends he was denied fundamental due process and a fair trial due to the judge's failure to conduct the trial with impartiality by interfering with the presentation of evidence and relying upon his recollection of his findings in the prior guardianship trial. Based upon our review of the record, we agree Ray was denied due process.

Our rules of evidence provide that a trial judge has the right to "examine a witness regardless of who calls the witness." N.J.R.E. 614 (b). Yet, in doing so, a "judge must exercise his power to participate actively in a trial with great restraint and with an effort to maintain an atmosphere of impartiality, particularly in a jury trial." State v. Cohen, 211 N.J. Super. 544, 553 (App. Div. 1986). A judge's questions should not be "perceived as an advocate for any side of a dispute," L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 537 (App. Div. 2011), because when such advocacy occurs, "there may be substantial prejudice to the rights of one of the litigants," D.M.R. v. M.K.G., 467 N.J. Super. 308, 321 (2021) (quoting Village of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 132 (1958)).

A-2158-22

The trial judge showed bias and impartiality by coaching the Division's adoption worker during the following questioning:

> THE COURT: So do you recall testifying at the last trial that was here before me?
>
> THE WITNESS: Yes.
>
> THE COURT: All right. So, . . . when you came in then, my recollection is that we were running through one after another alleged adoptive homes for [Henry]. In fact, my recollection is that there were four separate homes in three weeks that he had had.
>
> And despite discussions in court that it might be best if we waited to see how [Henry] did in these other homes, the [D]ivision nevertheless produced a person that said if you free him up for adoption he'll be easy to adopt in the future, but he had only been in the most recent adoptive home – at the time of that trial by I think it was like two months. Okay?
>
> So . . . let's start at that period. So he'd been with an adoptive home. Do you remember what adoptive home that was that [Henry] was in at the time of that trial?

Bias was further evident when the judge directed the adoption worker not to focus on Ray's positive unification efforts:

> THE COURT: You know, can you put some more meat on your statement so that I can understand the context of what occurred?
>
> THE WITNESS: Sure. The Division tried to make contact with [Ray] through phone –

THE COURT: Why though? No, no, no –

THE WITNESS: – (inaudible) at his residence –

THE COURT: Listen to me. Not the physical how you tried to make contact with him. But why were you making contact with him as part of . . . .

THE WITNESS: That's part of –

. . . .

THE WITNESS: – policy –

THE COURT: Yeah, go ahead. Tell me. That's what I'm looking for, so go ahead.

THE WITNESS: So it's part of the Division policy to make contact with the parents once a month.

THE COURT: Okay.

THE WITNESS: Just to see how they're doing, if they're engaging in any services on their own to actually, you know, get their status or engage them in services. [Ray] didn't make [himself] reachable for the Division at that time.

THE COURT: Okay.

THE WITNESS: We –

THE COURT: So at that time . . . in January, was the Division asking him to do any services or was he completely done with all of the services that had been offered and suggested . . . in January of 2022?

8

THE WITNESS: The Division was asking [Ray] to engage in substance abuse program at that time.

THE COURT: Okay. And . . . he was not engaging in it at all at that time?

THE WITNESS: No.

THE COURT: Okay. And do you know how long before January that he had refused or said that he was going to and didn't?

THE WITNESS: I don't recall.

The judge's impartiality was also apparent by his interruption of defense counsel's cross-examination of the Division's psychological expert, objecting to and misrepresenting counsel's questioning:

> [DEFENSE COUNSEL]: And you talk about [Henry] bringing candy and giving candy to [Ray], but if you read those – I mean, <u>would you be surprised that most – almost every one of those visitation records it's actually [Ray] bringing things for [Henry]</u>? Shoes, toys, candy, things like that? I mean, would you – would that –
>
> THE COURT: Well, I'm not sure that that –
>
>    . . . .
>
> THE COURT: Doctor. Doctor. Doctor. [Counsel], <u>I am not sure that that is a fair characterization to say that all of the records show that</u>. When you know that there are sheets where [Ray] says I'm going to get candy for [Henry] and then never shows back up, when –

. . . .

THE COURT: When there's been testimony that even in jail [Henry] is the one who becomes responsible and says, when [Ray] is aggravated or annoyed that, you know, he needs, you know, to calm down and the like. So the objection – I mean, the problem that I have with your question is you said – it sounded like you said all of his records show, and I don't know that that's a fair question because there are certainly some that show very positive sides.

There's also the one in September that shows that – or there's – the months of September and October where they had to be terminated where he terminated them early, where the witness testified that even [Henry] is starting to terminate them early at some time. And there's one in I believe October – it's either September or October where [Ray] was falling asleep in [CarePlus] . . . I'm sorry, [CarePlus] – whatever it is had to terminate the visitation because he was either high or he said he was sleepy.

So my point is if you're gonna cross-examine, okay, I don't think you can say "all." I think you have to – you have to be – it has to be somewhat of a fairer question for the – for the psychologist. What I heard you said –

[DEFENSE COUNSEL]: Understood, Your Honor.

THE COURT: What I heard you essentially say is you made these observations once in time, but if I told you every time he was with his child that other people were observing completely different things. Then the psychologist answered to you, I would be surprised if no one ever observed these things. And you followed with, well, all of them are. And that doesn't seem to be

10

a fair representation, considering the ones that I've just reiterated for you. <u>So why don't you change the question</u>. I understand –

. . . .

THE COURT: <u>[I]t's cross[-]examination, but I don't think the question is fair</u>.

[DEFENSE COUNSEL]: <u>I understand, Your Honor, and I'll withdraw my – the last question</u>.

THE COURT: Okay.

[DEFENSE COUNSEL]: I'll move on.

[(Emphasis added).]

Even though defense counsel clearly stated that <u>most</u>, not <u>all</u>, of the visitation records indicated Ray brought things for Henry, the court interrupted defense counsel's cross-examination of the expert, resulting in defense counsel withdrawing his question and moving on to a different topic. The judge essentially testified against Ray, underscoring his shortcomings, by referring to the May 2021 guardianship trial.

The final indication of the judge's bias occurred during his examination of Ray, which essentially amounted to him testifying against Ray. The judge stressed his recollection of Ray's substance abuse, derived not on the trial testimony elicited from the Division or the Law Guardian in the present trial,

11

but rather based on the May 2021 guardianship trial. The questioning was as follows:

> THE COURT: [Ray], you've been before me on many occasions and you've told me lots of things on lots of occasions; right? You tried to tell me at the last time that we had a trial, I never did drugs at all in my life; right? Until . . . this woman set me up and you took my child. Isn't that what you told me? And I said [Ray] . . . I just found that you've been telling people, you know, you've had a drug problem for a very, very long time; right?
>
> [DEFENDANT]: I was kind of like (inaudible) the duration of my child's life, sir. That's kind of where I was looking at. The duration of my child's life hadn't used until –
>
> THE COURT: You told –
>
> [DEFENDANT]: – after they –
>
> THE COURT: And then . . . you told me that it was only because they took your child away from you that you did drugs; right?
>
> [DEFENDANT]: Yes. Yes, I said that.
>
> THE COURT: But don't you admit that you've been doing drugs since you were a teenager at 13? You've been doing drugs and sometimes you were able to break it; right? But sometimes you weren't –
>
> [DEFENDANT]: I (inaudible) ten years plus being drug free, Your Honor.

12

The trial judge's questioning of the Division's witnesses and Ray, interruption of defense counsel's cross-examination, and unnecessary recitation of his May 2021 guardianship trial findings, demonstrated his bias and improperly crossed the line into impartiality, therefore, depriving defendant of a fair trial.

III

Judicial Notice

Ray contends the judge erred by granting the Division's request to take judicial notice of factual findings made at the prior guardianship trial over his and the Law Guardian's objections. Neither defense counsel nor the Law Guardian had represented their respective clients at the prior guardianship trial. They objected claiming they were not specifically aware of and did not have an opportunity to review the judge's opinion. Ray contends the judge's decision demonstrated his bias, and "was particularly troubling because [he] did not receive notice of [the judge's] intention to do so until the conclusion of [the Division's] presentation of evidence." We agree with these contentions.

Our evidence rules provide that a judge may judicially notice a fact, including the "records of the court in which the action is pending and of any other court of this state or federal court sitting for this state." N.J.R.E. 201(b)(4).

A-2158-22

Taking judicial notice at a party's request requires the judge to be "supplied with the necessary information." N.J.R.E. 201(d).

Judicial notice allows a judge to acknowledge certain known facts without the presentation of proofs. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 201 (citing Fred Freeman, A Trial Lawyer Utilizes The Concepts Of Judicial Notice and Presumptions, 95 N.J.L.J. 81 (1972)). "The purpose of judicial notice is to save time and promote judicial economy by precluding the necessity of proving facts that cannot seriously be disputed and are either generally or universally known." State v. Silva, 394 N.J. Super. 270, 275 (2007) (noting case law supports the "proposition that facts that can be reasonably questioned or disputed may not be judicially noticed"). "Judicial notice cannot be used 'to circumvent the rule against hearsay and thereby deprive a party of the right of cross-examination on a contested material issue of fact.'" Ibid. (quoting RWB Newton Ass. v. Gunn, 224 N.J. Super. 704, 711 (App. Div. 1988)). "Because judicial notice may not be used to deprive a party of cross-examination regarding a contested fact, the doctrine also cannot be used to take notice of the ultimate legal issue in dispute." Ibid.

The trial judge should not have taken notice of its prior guardianship trial's factual findings because defendant was prejudiced. While the judge's May 13,

2021 order provided the Division "may . . . ask the [c]ourt to accept and adopt the findings of facts and conclusion of law made by the [c]ourt in its decision today," the Division's request at the conclusion of its case did not afford Ray sufficient notice. (Emphasis added).

Contrary to N.J.R.E. 201(d), the Division did not produce a transcript of the prior guardianship trial, including the judge's oral opinion. Not only did Ray not know what findings were being subject to judicial notice, he was unable to challenge them when presenting his case in chief or cross-examining the Division's witnesses. The judge took notice of his recollection of the prior guardianship trial, which defendant could not fairly address. Neither our court rules nor our case law allows this. Considering there were disputed facts in both the prior and current trials addressing the ultimate legal issue in dispute—Ray's guardianship—the judge should not have taken judicial notice of his prior findings without fair notice to defendant.

Finally, prejudice to defendant is evidenced by the judge's consideration under the second prong of the best interests of the child test referencing his prior findings, stating: "The [c]ourt was satisfied at . . . [the May 2021 guardianship trial] that . . . [Ray] demonstrated . . . he's either not willing or able to permanently remedy the circumstances that led to [Henry's] removal[]." That

15

determination was not verifiable since the Division failed to provide transcripts of the prior trial, and the facts the judge relied upon were disputed in that trial. See Silva, 394 N.J. Super. at 275.

The Division asserts that "[e]ven if the trial court's decision to take judicial notice was wrong, it would be harmless error" because the record contains ample, credible, and uncontested evidence to support its decision here. We see it differently. The record reveals the judge's desire to expeditiously resolve Henry's guardianship given the need for permanency in his life. However, termination of Ray's parental rights demands due process, which was violated through the judge's biased examination of witnesses and by taking judicial notice of his factual findings from the prior trial. The due process violations infected the entire proceeding and the order terminating Ray's parental rights

Given the history of these proceedings, we direct that a different judge be assigned to conduct a new guardianship trial to avoid any claim of impartiality based on the reviewing judge's original factual findings and legal conclusions. See Graziano v. Grant, 326 N.J. Super. 328, 349 (App. Div. 1999) (stating the power to remand to a different judge "may be exercised when there is a concern that the trial judge has a potential commitment to [the judge's] prior findings.");

see also Luedtke v. Shobert, 342 N.J. Super. 202, 219 (App. Div. 2001) (recognizing "time and effort the court put into the case" but expressing concern that the trial judge would be in an "untenable position" on remand). However, we take no position on the outcome of this matter on remand.

To the extent that we have not addressed any of the parties' arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded for a new guardianship trial resulting in a judgment within one hundred and twenty days of this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2158-22