# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0464-24

IN THE MATTER OF THE APPEAL
OF THE DENIAL OF J.L.B.'s[1]
APPLICATION FOR A FIREARMS
PURCHASER IDENTIFICATION
CARD AND A PERMIT TO
PURCHASE A HANDGUN.

_____

Submitted March 18, 2026 – Decided April 7, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GPA-0064-22.

Evan F. Nappen, Attorney at Law, PC, attorneys for appellant J.L.B. (Louis P. Nappen, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Edward F. Ray, Assistant Prosecutor, on the brief).

PER CURIAM

---

[1] Due to the discussion of J.L.B.'s psychiatric condition, we refer to appellant by initials pursuant to Rule 1:38-3(a)(2).

J.L.B. appeals from an order denying his appeal from the New Milford Police Department's (NMPD) denial of his application for a Firearms Purchaser Identification Card (FPIC) and a permit to purchase a handgun (PPH). On his application, J.L.B. answered "no" to the question, "Have you ever been attended, treated, or observed by any doctor or psychiatrist or at any hospital or mental institution on an impatient or outpatient basis for any mental or psychiatric condition?"

In denying the application, the NMPD cited solely a suicidal statement made by J.L.B.'s daughter several years prior and the inability to obtain records from the Division of Child Protection and Permanency (DCPP). The NMPD then concluded issuance of the permits to J.L.B. would not be in the interest of the public health, safety, or welfare. J.L.B. filed an appeal in the Law Division, which the court denied, finding J.L.B. was disqualified pursuant to N.J.S.A. 2C:58-3(c)(3) for knowingly falsifying information on the application, and pursuant to N.J.S.A. 2C:58-3(c)(5), for lacking the character and temperament necessary to be entrusted with a firearm.

After careful review, we reverse and remand for a hearing before a different trial judge. There is no evidence in the record demonstrating J.L.B. knowingly falsified information on his application. Further, J.L.B. was not

A-0464-24

given notice of the (c)(3)(5) disqualifier until after he had already presented his closing argument, in violation of his right to due process. Additionally, the trial court failed to address whether the alleged falsification was made knowingly, as required by the statute. Furthermore, with respect to N.J.S.A. 2C:58-3(c)(5), the court's reasoning provided no meaningful explanation as to why issuance of an FPIC to J.L.B. would be contrary to the public health, safety, or welfare.

## I.

We gather the following facts from the trial court's hearing on J.L.B.'s appeal. J.L.B. is a certified public accountant with no criminal history. He has primary custody of his seven children, who range from six to sixteen years old.

In April 2020, J.L.B.'s daughter, M.B., who was then nine years old, sent a text message to her teacher reading: "I want to die" and "I have spent four days with dad, and four days with mom, and I keep switching until everything is settled. But I can't sleep without knowing if mommy is okay and safe." The message led to M.B. receiving several months of therapy.

DCPP was involved in the family's life on three separate occasions, each time deeming the allegations "Not Established."[2] J.L.B.'s ex-wife, A.B.,

---

[2] The court determined the DCPP records were relevant to J.L.B.'s appeal and ordered them to be released to the parties, subject to a restriction on further dissemination.

testified on behalf of the State, describing alleged incidents of verbal and physical abuse by J.L.B. against her and two of their children, as well as her struggles with alcoholism, for which she had completed in-patient rehabilitation. A.B. never filed for or obtained a temporary restraining order against J.L.B. The court found her testimony not "completely credible" and characterized it as "totally based upon hearsay."

J.L.B.'s sister testified as a character witness, describing his demeanor and relationship with his family, and expressing no concerns about him owning a firearm. Dr. Richard Cyriacks, a family friend, similarly testified he had no concerns about J.L.B. responsibly handling a firearm. J.L.B. testified he had purchased a biometric firearm safe in which he intended to store firearms if his permits were granted.

J.L.B. testified he had seen a psychologist, Dr. Veronica Lenzi, from 2018 to 2022 for marital issues, but denied ever being diagnosed with a mental health condition or receiving psychiatric treatment or medication. Briefly, at around age nineteen, he had also seen a therapist following the death of his father. Following this testimony, the State moved to compel the release of J.L.B.'s mental health records from Dr. Lenzi, which the court granted.

A-0464-24

The court admitted J.L.B.'s counseling records and a letter from Dr. Lenzi into evidence. In her letter, Dr. Lenzi noted she first saw J.L.B. in August 2017 for "marital difficulties" and "[h]e presented as concerned about his marriage and stressed but positive and high functioning." He reconnected for individual therapy in April 2020 because his wife had taken their children to Connecticut, causing him "much distress," and was seen on an as-needed basis through January 3, 2022. Dr. Lenzi reported "his symptoms were within normal limits for the chronic stressors and family crisis he worked through during [her] treatment with him." She further reported "[she] observed no unstable mental health issues – and his treatment focused on implementing stress-management strategies, communication awareness and improvement, relationship building with his children, decreasing internal anxiety, and meeting his challenges in an aware and grounded manner."

As to the records themselves, Dr. Lenzi wrote in an August 26, 2017 progress note "[J.L.B.] stressed – symptoms of [a]nxiety [and] [d]epression – related to marital difficulties." An April 1, 2020 progress note stated J.L.B. "present[ed] w[ith] anxiety [and] depression – expresse[d] being 'devastated.'"

On August 6, 2024, the court denied J.L.B.'s appeal, finding he was disqualified pursuant to N.J.S.A. 2C:58-3(c)(3) for knowingly falsifying

5

information on the application regarding previous mental health treatment, and pursuant to N.J.S.A. 2C:58-3(c)(5) for lacking the character and temperament necessary to be entrusted with a firearm. This appeal followed.

II.

Our review of "a trial court's legal conclusions regarding firearms licenses [is] de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015). We "accept a trial court's findings of fact that are supported by substantial credible evidence," particularly when the evidence is testimonial and involves credibility determinations. In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997). A "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

N.J.S.A. 2C:58-3 governs the issuance of FPICs and PPHs. A person may not receive an FPIC or a PPH if they are (1) "known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-

A-0464-24

defense, that would pose a danger to self or others," N.J.S.A. 2C:58-3(c), or (2) subject to any of the disqualifiers listed in N.J.S.A. 2C:58-3(c)(1) to (15).

Pursuant to N.J.S.A. 2C:58-3(c)(3), no FPIC or PPH shall be issued "[t]o any person who knowingly falsifies any information on the application form for a handgun purchase permit or firearms purchaser identification card" (emphasis added). "[I]nvoking FPIC/PPH disqualification when any falsification is tendered is consistent with the application's underlying function, which is to provide information to facilitate the police chief's background investigation." In re Appeal of the Denial of R.W.T., 477 N.J. Super. 443, 469 (App. Div. 2023) Further, "an FPIC/PPH application that includes a knowing falsehood is disqualified at the moment it is filed and cannot be rehabilitated by an admission made later . . . . " Id. at 473 (emphasis added).

We note, initially, J.L.B. did not receive notice that N.J.S.A. 2C:58-3(c)(3) was at issue until the State raised it in its closing statement, which was delivered after J.L.B. had already presented his closing statement. See McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993) ("To comport with due process, a judicial hearing requires notice defining the issues and an adequate opportunity to prepare and respond."). N.J.S.A. 2C:58-3(c)(3) was not cited as a basis for disqualification in the NMPD's denial letter,

nor was it discussed as a potential ground for denying his appeal until both parties had presented their evidence at the hearing. J.L.B. was therefore denied the opportunity to defend himself on this ground until the hearing was all but completed.

Moreover, the trial court failed to address whether J.L.B. knowingly falsified his response. At the close of the hearings, after both parties had presented closing arguments, the court pressed J.L.B. as to his understanding of the nature of his mental health treatment, his course of therapy with Dr. Lenzi, and his interpretation of the question on the FPIC application regarding mental or psychiatric treatment.[3] J.L.B. explained he had answered "no" because he had been treated by a psychologist who held a Ph.D., not a psychiatrist or physician. He further stated he never received a clinical diagnosis of any mental health condition, including depression or anxiety, and was never treated with any psychiatric medication. He also noted he had not seen the progress notes

---

[3] We note this line of questioning by the court was improper, as were other lines of questioning throughout the hearings. When presiding over a bench trial, the court may examine witnesses "to clarify testimony, aid the court's understanding, elicit material facts, and assure the efficient conduct of the trial." D.M.R. v. M.K.G., 467 N.J. Super. 308, 320-21 (App. Div. 2021); N.J.R.E. 614. In this case, the trial court extensively cross-examined J.L.B. on multiple occasions and, in doing so, crossed "that fine line that separates advocacy from impartiality" and substantially prejudiced J.L.B.'s right to a fair hearing. Id. at 321 (quoting Village of Ridgewood v. Sreel Inv. Corp., 28 N.J. 121, 132 (1958)).

until they were released during the hearing, and he had begun to address why he would not know "what a doctor puts [i]n her notes" before being abruptly cut off by the court.

The trial court did not address these contentions. Instead, it relied on Dr. Lenzi's progress notes, unknown to J.L.B. at the time he filled out his application, to erroneously conclude J.L.B. suffered from anxiety and depression and he had falsely answered the questionnaire. Whether J.L.B.'s response was false, however, is a question the record before us does not resolve for the following reasons: J.L.B. was not afforded an adequate opportunity to defend himself given the lack of notice, the record contains no clinical diagnosis of a mental health condition, or evidence of any mental health treatment, and Dr. Lenzi did not testify at the hearings.

Importantly, the court's analysis entirely ignores the statutory requirement the falsification be made knowingly. Even if J.L.B.'s response was false, he had no reason to know the contents of Dr. Lenzi's notes when he completed the application. Those records were not produced until the hearings on his appeal, long after the application was submitted. A finding of knowing falsification cannot rest solely on the contents of records J.L.B. had never seen.

9

A-0464-24

Additionally, the court also denied the appeal pursuant to N.J.S.A. 2C:58-3(c)(5), finding no FPIC or PPH shall be issued "[t]o any person where the issuance would not be in the interest of the public health, safety or welfare[.]" This is the "broadest" of the disqualifications for obtaining a PPH or FPIC. In re Application of Carlstrom, 240 N.J. 563, 570 (2020). The provision "is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" In re Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003) (quoting Burton v. Sills, 53 N.J. 86, 91 (1968)).

The court's reasoning in determining J.L.B. was disqualified pursuant to N.J.S.A. 2C:58-3(c)(5) is as follows:

> I also find that he's disqualified pursuant to 2C:58-3(c)(5), to any person where the issuance would not be in interest of the public health, safety, or welfare, because the person was found to be lacking the essential character of temperament necessary to be entrusted with a firearm. And that's really due to Mr. [J.L.B]'s testimony.
>
> Particularly his testimony before the [c]ourt here today where he minimizes his course of treatment with Dr. Lenzi, and tries to divert attention away from Dr. Lenzi's Progress Notes, in a very long letter, which states that Mr. [J.L.B.]'s treatment, while focusing on decreasing his anxiety, and the fact that he presented

A-0464-24

with depression and anxiety, both at Intake and at various times throughout the course of his treatment.

The public health, safety, and welfare doesn't just include the public outside of the [J.L.B.] household. It also includes Mr. [J.L.B.] and his children.

So, that's the [c]ourt's decision. I do find that the State has met its' burden by preponderance of the evidence.

This reasoning is misplaced. J.L.B.'s discussion of Dr. Lenzi's progress notes was not an attempt to minimize his treatment or divert the court's attention, but rather an effort to explain why those notes did not render his answer on the application knowingly false. A self-represented applicant's attempt to contextualize his own counseling records cannot support a finding of unfitness within the meaning of N.J.S.A. 2C:58-3(c)(5). Indeed, we recently rejected the notion an applicant's credibility or dishonesty can serve as the sole basis for disqualification pursuant to N.J.S.A. 2C:58-3(c)(5). See In the Matter of the Appeal of the Denial of Mikhail Polatov's Application for a Firearms Purchaser Identification Card, __ N.J. Super __ (App. Div. 2026) (slip op. at 16-18) (finding no correlation between the applicant's lack of credibility and "the absence of the essential character of temperament that would make him more likely than not to be a danger to public health, safety, or welfare if he had a firearm"). The court's reasoning provides no meaningful explanation for how the record supports a finding that issuance of a permit would be contrary to the

11

public health, safety, or welfare. See Weston v. State, 60 N.J. 36, 51 (1972) ("[I]n the final analysis for a court to sustain an administrative decision, which affects the substantial rights of a party, there must be a residuum of legal and competent evidence in the record to support it.").

Because the foregoing is dispositive, we decline to address appellant's remaining arguments. We reverse and remand this matter for a new hearing before a different judge, and take no position on the ultimate issue as to whether the permits should issue. See T.B. v. I.W., 479 N.J. Super. 404, 419 ("Because the judge who heard the matter has already engaged in weighing some of the evidence, the hearing shall take place before a different judge."). We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-0464-24